STATE OF NORTH CAROLINA v. STEVEN LEE

No. 4

(Filed 10 May 1977)

1. **Jury § 5— juror's relationship with police officers — challenge for cause — denial improper**

    The trial judge erred by refusing to grant defendant's challenge for cause as to a juror who (1) had been a police officer's wife for eleven years, (2) had been on friendly terms with policemen who worked with her husband and attended parties given by the Police Auxiliary of which she was a member, (3) initially stated that she would have a tendency to lend more credibility to the testimony of the police officers than to that of a stranger, (4) only in reply to the questioning of the trial judge stated that she would not be swayed by her husband's employment, and (5) knew the State's chief investigating officer, by whose testimony the State sought to buttress the credibility of its only eyewitness.

2. **Jury § 5— juror's relationship with police officer — challenge for cause**

    A juror's close relationship with a police officer, standing alone, is not grounds for a challenge for cause.

3. **Homicide § 25— first degree murder where deadly weapon is used — improper instruction**

    The trial court in a first degree murder prosecution erred in submitting to the jury the offense of "first-degree murder where a deadly weapon is used," since no such offense exists and since the jury could infer from such an instruction that when a person is killed by the use of a deadly weapon, his assailant is, without further proof, guilty of murder in the first degree.

APPEAL by defendant from *Tillery, J.,* 8 March 1976 Session of WILSON County Superior Court. Defendant entered a plea of not guilty to a charge of first-degree murder.

The State's evidence consisted primarily of the testimony of Dennis Barnes. On direct examination Barnes testified that at about 10:00 p.m. on 20 December 1975 he and defendant left a night spot in Wilson, North Carolina, known as "Ford's Place." They walked to an apartment building in an area known as the "School Yard" to look for defendant's girl friend. There they went to an apartment where they bought wine. Barnes noticed that "Dusty" Battle, who was also there buying wine, carried a wallet with some money in it. Barnes left to go to a house next door, but before going inside he turned and saw defendant pick up an object resembling an ax handle and strike "Dusty" Battle on the head. Defendant then bent down over the body of "Dusty" Battle for a moment. He summoned Barnes and the two of them returned to "Ford's Place." Defendant told Barnes that he had taken some money from the man he had hit and threatened to "come looking" for Barnes if he told anyone what he had done.

On cross-examination the witness Barnes related a different sequence of events on the night of 20 December 1975, but reasserted that he observed defendant strike "Dusty" Battle. He also contradicted his testimony on direct examination by admitting that he had drunk a substantial quantity of wine on the night in question.

Detective Moore of the Wilson Police Department testified as to a prior statement made to him by the witness Barnes, which tended to corroborate Barnes' testimony at the trial. The State also offered the testimony of a witness who saw defendant and a companion in the "School Yard" area at about 10:55 p.m. on the night in question.

It was stipulated that the immediate cause of "Dusty" Battle's death was acute brain injury resulting from multiple blows to the head.

Defendant presented the testimony of several witnesses who stated that defendant had been at a night spot called "Diggins' Place" from 7:00 p.m. on 20 December 1975 until about 9:00 or 9:30 p.m. At about 10:00 p.m. he was seen in the vicinity of "Ford's Place" in downtown Wilson. Teresa Best, defend-

ant's girl friend, testified that she woke up at about 10:57 p.m. and heard defendant's voice coming from the kitchen of her home. Orlando Hutchinson, who was present at Teresa Best's home, also stated that he had recognized defendant's voice at that time. Angela Best testified that she saw defendant sitting in the kitchen from about 10:57 p.m. until 11:15 p.m. Teresa Best further testified that she had met defendant at "Ford's Place" at 11:45 p.m. and they had then gone to the Cherry Hotel where they had spent the night together.

Defendant also offered the testimony of Jessie Thompson who stated that he had seen "Dusty" Battle at about 9:30 or 10:00 p.m. in the company of another man.

The jury returned a verdict of guilty of murder in the first degree and the trial judge entered judgment imposing the death penalty.

*Attorney General Edmisten, by Assistant Attorney General Roy A. Giles, Jr. and Associate Attorney George J. Oliver, for the State.*

*Vernon F. Daughtridge, for defendant.*

BRANCH, Justice.

Defendant assigns as error the rulings of the trial judge during the selection of the jury.

We first consider the denial of defendant's challenge for cause of the juror Frances Norvell. This ruling was made after defendant had exhausted all of his peremptory challenges.

The *voir dire* examination of prospective juror Norvell disclosed that her husband was a police officer employed by the City of Wilson. He had been a police officer for a period of ten or eleven years and she had been married to him during that entire period. Mrs. Norvell knew most of the Wilson police officers and was acquainted with police officer Johnny Moore, the chief investigating officer in this case who testified in corroboration of the State's principal witness, Dennis Barnes. She was also acquainted with Captain Tom Smith and Captain Hayes, the Chief of Police of Wilson. Mrs. Norvell and her husband had visited in Captain Hayes' home and Mrs. Hayes had visited in their home. She was friendly with numerous members of the Wilson Police Department. Her brother-in-law was a

detective on the Wilmington police force. Prospective juror Norvell stated that she was a member of the Wilson Police Auxiliary and was acquainted with Officer Johnny Moore's wife who was also a member of that organization. The Auxiliary occasionally gave parties which were attended by police officers and their spouses. Her husband on rare occasions discussed with her the cases in which he was involved and they had discussed his view on capital punishment.

The following exchanges occurred between defense counsel and the prospective juror and between the trial judge and the prospective juror:

Q. I ask you, Mrs. Norvell, since you know Mr. Moore and Tom Smith and your husband is on the Wilson Police Department, if they should testify in this case, would you tend to put more weight on what they said about the case than some witness you had never seen before?

A. I don't think so.

Q. But, you are not sure about that?

A. No, sir.

Q. It is possible that you might believe what they said more than somebody you didn't know?

A. I would have a tendency to.

MR. DAUGHTRIDGE: If the Court please, we would challenge her for cause.

COURT: Let me ask you one or two things myself. I don't think anybody can make a positive statement as to who they would believe until they heard what they had to say. Do you have some genuine concern in your own mind that you might be swayed because of your husband's employment?

A. No, sir.

COURT: Do you feel you could be fair and impartial and give to the defendant's testimony or that of his witnesses the same weight you would give to somebody else?

A. Yes, sir.

---
State v. Lee
---

COURT: I don't think you have established enough.

Q. But, I did understand you to say that knowing Mr. Moore and Mr. Smith, you might tend to believe them more than somebody you don't know at all?

OBJECTION by Mr. Brown.

OVERRULED.

A. It's hard for me to say.

\*    \*    \*

Q. I asked you do you feel that there is a genuine possibility by reason of your knowledge of Mr. Moore and Mr. Smith, that you might believe their testimony in this case more so than some witness who you had never seen before?

A. I don't think there's a genuine possibility.

Q. Well, is there a possibility, Mrs. Norvell?

A. There might be.

Both the defendant and the State are entitled to a fair and unbiased jury. Either party may challenge for cause, without limit, a juror who is prejudiced against him. A party to an action does not have the right to select a juror prejudiced in his favor, but only to reject one prejudiced against him. In short, the primary purpose of the *voir dire* of prospective jurors is to select an impartial jury. *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481; *State v. Allred,* 275 N.C. 554, 169 S.E. 2d 833.

Unquestionably the trial judge is vested with broad discretionary powers in determining the competency of jurors and that discretion will not ordinarily be disturbed on appeal. G.S. 9-14; *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750; *State v. Johnson,* 280 N.C. 281, 185 S.E. 2d 698. We note the existence of a line of cases to the effect that "[t]he ruling in respect of the impartiality of the juror . . . presents no reviewable question of law." *State v. DeGraffenreid,* 224 N.C. 517, 31 S.E. 2d 523. *See also, State v. Bailey,* 179 N.C. 724, 102 S.E. 406; *State v. Bohanon,* 142 N.C. 695, 55 S.E. 797. In those cases the question was whether a preconceived opinion adverse to the defendant would prevent the juror from basing his verdict solely on the evidence. The case *sub judice* differs from that line of cases in

that it involves an objective relationship which permits the reviewing court to assess the effect of that relationship upon the juror's ability to act impartially.

In addition to statutory challenges for cause (as provided in G.S. 9-15), the courts have recognized that under certain circumstances there are relationships which impair a juror's ability to give a defendant an impartial trial. We briefly review some of those decisions.

In *State v. Allred, supra,* the defendant was charged with murder. This Court found error in the trial judge's refusal to excuse a prospective juror for cause and, speaking through Justice Bobbitt (later Chief Justice), stated:

> We do not hold that relationship within the ninth degree between a juror and a State's witness, standing alone, is legal ground for challenge for cause. This is in accord with the weight of authority in other jurisdictions. Annotation, "Relationship to prosecutor or witness for prosecution as disqualifying juror in criminal case," 18 A.L.R. 375; 31 Am. Jur., Jury § 192; 50 C.J.S., Juries § 218(b)(1). Even so, where such relationship exists and is known and recognized by the juror, a defendant's challenge for cause should be rejected only if it should appear clearly that, under the circumstances of the particular case, the challenged juror would have no reason or disposition to favor his kinsman by giving added weight to his testimony or otherwise. Ordinarily, if the testimony of the witness will be directed to proof of some formal matter or to some minor facet of the case, there would be no substantial basis for challenge for cause. Here we are considering a radically different factual situation.

The accused was granted a new trial in *State v. Jackson,* 43 N.J. 148, 203 A. 2d 1, because of the trial judge's refusal to excuse juror Carolan. This juror had originally stated that he was not personally acquainted with any law enforcement officers, but it was thereafter elicited that certain members of the Elizabeth, New Jersey, police force were neighbors and friends with whom he had grown up and attended church. He had known Detecive Lynes for about twenty years and regarded him as a close friend. This officer was a major witness for the State and his credibility was subject to attack by the defense. Nevertheless, the prospective juror stated that if other wit-

nesses contradicted the testimony of Detective Lynes he would not be inclined to give more credence to the Detective's testimony because of their friendship. Defendant exhausted his peremptory challenges and challenged prospective juror Carolan for cause. In its opinion, the New Jersey Supreme Court, *inter alia,* declared:

> We, of course, recognize that the trial court is vested with broad discretionary powers in determining the qualifications of jurors and that its exercise of discretion will ordinarily not be disturbed on appeal. See *State v. Simmons,* 120 NJL 85, 90, 198 A 294 (E & A 1938). Nevertheless we are satisfied that, under the particular circumstances here, the refusal to excuse Mr. Carolan constituted error which impaired the right of the defendants to competent and impartial jurors. His close relationship with members of the Elizabeth police department, particularly Detective Lynes, suggests inability to deal with the evidence with the measure of impartiality required by the law. It must be borne in mind that Detective Lynes was an important State's witness whose credibility was under direct attack. Though Mr. Carolan may have been wholly sincere in his statement that his long and close friendship with Detective Lynes would have no bearing whatever on the issue of credibility, we find it difficult to accept for it runs counter to human nature. Surely the defendants were amply justified in refusing to accept it and when their objection to his serving was voiced in timely fashion it should have been honored, if for no other reason than to insure their confidence in the basic fairness of the trial. In any sound judicial system it is essential not only that justice be done but also that it appear to be done. . . .

The court also quoted with approval the following language from *United States v. Chapman,* 158 F. 2d 417:

> . . . A juror's answer to questions touching his state of mind is primary evidence of his competency, but the ultimate question is a judicial one for the court to decide, and in case of doubt, justice demands that the challenge be allowed. *Scribner v. State,* 3 Okl. Cr. 601, 108 P. 422, 35 L.R.A., N.S., 985; *Temple v. State,* 15 Okl. Cr. 176, 175 P. 733, 736; *Crawford v. United States,* 212 U.S. 183, 197, 29 S.Ct. 260, 53 L.Ed. 465 [471], 15 Ann. Cas. 392; 31 Amer.

Juris., p. 638. Only by a punctilious regard for a suspicion of prejudice can we hope to maintain the high traditions of our jury system. We must make sure that the lamentations of the unsuccessful litigant is without foundation, either in fact or circumstance." . . .

In *State v. Joiner,* 163 La. 609, 112 So. 503, the defendant was charged with murder and a prospective juror stated on *voir dire* that he was a personal friend of the witness for the State and had been a friend of the deceased. He further said that although he had previously formed an opinion about the case, it would not influence his consideration of defendant's guilt or innocence. He indicated that he would not give more weight to his friend's testimony than to the conflicting testimony of a stranger. Holding that the trial judge erred by allowing this juror to sit, the Supreme Court of Louisiana, in part, stated:

These declarations of the juror, however, must be tested, like all other human testimony, according to the common knowledge, experience, and observation of mankind.

It is the natural impulse of all men, with rare exceptions, when the direct question is put to them, especially by one in authority, such as a district attorney or a trial judge, to declare that they believe they can disregard a preconceived opinion and render a fair and impartial verdict upon the evidence submitted to them. In general, they are sincere in their statement and belief. The declaration, however, should not only proceed from the mouth of the venireman, but it should be made in connection with a state of facts showing that it is probably true.

\* \* \*

. . . Nor do we believe that the juror, without questioning the sincerity of his statement on his voir dire, was in a position to weigh the evidence of his friend against the evidence of strangers and of the defendant, accused of murdering his intimate friend, so as to strike a balance between them such as the law requires.

\* \* \*

The court is not bound by the answers of the juror on his voir dire when they are opposed to and inconsistent

with the facts and circumstances disclosed by his examination. *State v. Barnes,* 34 La. Ann. 395.

See also: *Wright v. Bernstein,* 23 N.J. 284, 129 A. 2d 19; *Johnson v. Reynolds,* 97 Fla. 591, 121 So. 793.

[1] In instant case the position of juror Frances Norvell was such that she was subject to strong influences which ran counter to defendant's right to a trial by an impartial jury. We can judicially notice that the forces of law and order, which are most strongly represented by our police officers, are constantly at war with those who commit crimes and those charged with the commission of crimes. To assume that juror Norvell, a police officer's wife for eleven years, who had been on friendly terms with policemen who worked with her husband and attended parties given by the Police Auxiliary of which she was a member, could assume the roles of impartiality is to ignore human reactions. This juror may have well felt that in the eyes of her husband, his fellow officers, and his superior officers, she would have given comfort to the opposition had she voted to return a verdict of not guilty. We further note that the juror Norvell initially stated that she would have a tendency to lend more credibility to the testimony of the police officers than to a stranger. It was only in reply to the questioning of the trial judge that she stated that she would not be swayed by her husband's employment and that she could give the testimony of defendant and his witnesses the same weight as that of others. It is natural that a lay witness in response to a direct question by one in authority, such as this trial judge, would be strongly inclined to state that he could impartially render a verdict in accord with the evidence. *State v. Joiner, supra.* Finally, Officer Johnny Moore, with whom the juror was acquainted, was an important State's witness. He was not only the State's chief investigating officer, but it was by his corroborative testimony that the State sought to buttress the credibility of its only eyewitness.

[2] Under the particular circumstances of this case, we do not believe that juror Norvell could qualify as a disinterested and impartial juror. However, we hasten to add that a juror's close relationship with a police officer, standing alone, is not grounds for a challenge for cause.

We hold that the trial judge erred by refusing to grant defendant's challenge for cause as to the juror Norvell.

---

**State v. Lee**

---

Defendant assigns as error several portions of the trial judge's charge. We deem it necessary to consider only one of the assignments of error directed to the trial judge's instructions.

**[3]** On three occasions, including his final mandate to the jury on the charge of first-degree murder, the trial judge submitted to the jury the offense of "first-degree murder where a deadly weapon is used." We do not approve this instruction.

G.S. 14-17 defines murder in the first degree as follows:

A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, kidnapping, burglary or other felony, shall be deemed to be murder in the first degree . . . .

This instruction creates a new offense without benefit of statute or court decision. It is true that when a killing resulting from the intentional use of a deadly weapon is established, two presumptions arise: (1) that the killing was unlawful, and (2) that it was done with malice. *State v. Biggs,* 292 N.C. 328, 233 S.E. 2d 512. An unlawful killing with malice is murder in the second degree. *State v. Jones,* 287 N.C. 84, 214 S.E. 2d 24. Obviously the use of a deadly weapon does not furnish the elements of premeditation and deliberation, necessary to a conviction of first-degree murder. The vice of this instruction is that a jury could infer that when a person is killed by the use of a deadly weapon, his assailant is, without further proof, guilty of murder in the first degree.

We do not deem it necessary to discuss the remaining assignments of error since they may not recur at the next trial.

For the reasons stated, there must be a

New trial.