STATE OF NORTH CAROLINA v. DANIEL McKINNON

No. 327A90

(Filed 2 May 1991)

1. **Criminal Law § 34.4 (NCI3d)— evidence of another offense— relevancy for rebuttal—admissible for "other purposes"**

    Testimony by defendant's girlfriend giving details of defendant's assault on her on the morning of 18 August was relevant in a prosecution of defendant for a rape and murder on the night of 18 August to rebut or contradict the inference that defendant was referring to the altercation with his girlfriend rather than to the rape and murder of the victim when he told a witness the night of 18 August that he had "beat this girl." Therefore, the testimony did not show only that defendant had a violent propensity toward women but was properly admitted for "other purposes" under N.C.G.S. § 8C-1, Rule 404(b).

    **Am Jur 2d, Evidence § 298.**

2. **Jury § 7.9 (NCI3d)— potential juror—bias in favor of law officers—challenge for cause**

    The trial court did not abuse its discretion in denying defendant's challenge for cause of a potential juror on the basis that he might assign more credibility to law enforcement officers than to other witnesses where the juror's responses during voir dire indicated that he would not automatically give enhanced credence to testimony by any particular class of witnesses but that certain factors in a witness's background, such as training or experience, would affect the credibility of that witness.

    **Am Jur 2d, Jury § 285.**

**3. Jury § 7.9 (NCI3d) — potential juror — challenge for cause — requirement that defendant present evidence**

The trial court did not abuse its discretion in refusing to excuse for cause a potential juror who agreed with a statement during voir dire that she would require defendant to present evidence in his defense where, immediately following that response, the juror asked that the question be repeated and she ultimately agreed three times that if the State did not meet its burden of proof she could find defendant not guilty even though he presented no witnesses in his behalf.

**Am Jur 2d, Jury § 204.**

APPEAL of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by *Ellis, J.,* at the 18 September 1989 Criminal Session of Superior Court, ROBESON County, upon a jury verdict finding defendant guilty of first-degree murder. Calendared for argument in the Supreme Court 9 April 1991; decided on the briefs without oral argument pursuant to N.C.R. App. P. 30(d).

*Lacy H. Thornburg, Attorney General, by Debra C. Graves, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for defendant appellant.*

WHICHARD, Justice.

Defendant was tried capitally and convicted of first-degree felony murder on the theory that the killing was committed during the course of second-degree rape and second-degree sex offense. Following defendant's sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended life imprisonment and the trial court entered judgment accordingly. Defendant appeals his conviction of first-degree murder as a matter of right. N.C.G.S. § 7A-27(a) (1989). We hold that defendant's trial was free of prejudicial error.

The State's evidence tended to show that on the evening of 18 August 1987, eighteen-year-old Tammie Michelle Martin left her grandmother's house to go to the store for a snack. Martin's grandmother, Lillie McKenneth, testified that Martin called around 10:00 p.m. to say she was on her way home, but she never arrived. Reginald McDougald testified that between 9:30 and 10:00 p.m.

that evening he was riding his bicycle on Martin Luther King (MLK) Drive and he saw Martin walking south towards Lumbee Homes. McDougald testified that Martin told him she was going to Shannon McDuffie's house in Lumbee Homes. McDuffie testified that Martin arrived at her house around 9:45 p.m., visited briefly, called her grandmother to say she was on her way home, unsuccessfully tried to call her boyfriend, and then left at approximately 10:30 p.m.

At approximately 11:12 or 11:13 p.m. on 18 August, Vincent McCall was driving to pick up his brother, Phillip White, from work at the Pizza Hut. On the way McCall saw defendant at the corner of Oregon Street and MLK Drive. Defendant asked McCall for a ride and McCall agreed. McCall testified that defendant was sweating and seemed to be in a "hysterical" state. According to McCall, defendant got into the car and said: "Vince, I beat this girl. I beat her bad. I beat her bad. I don't know what got into me. I beat her bad, Vince. I'm going to have an assault charge on me tomorrow." When they arrived at the Pizza Hut, Phillip White brought some water out for defendant to drink. On the way back home, McCall began to admonish his brother that alcohol and drugs would lead to trouble. In a joking manner defendant agreed, telling White that drinking could cause a person not to know what he was doing. Then defendant stated: "I did something tonight. I shocked myself."

On 19 August 1987, Lillie McKenneth and Tommy Moody, Tammie Martin's boyfriend, reported her disappearance to the police. At approximately 2:00 p.m. that day Tommy McNeil, one of McKenneth's neighbors, discovered Tammie's body among overgrown weeds and high grass on a vacant lot about one block from McKenneth's home. The victim was clothed only in tennis shoes and socks. The police found a "lock blade" knife with a four-inch blade and assorted articles of clothing scattered in the grass on the lot. An autopsy of the victim showed that the cause of death was acute subdural hemorrhage on the surface of the brain caused by trauma to the head. The victim suffered, in addition, five fractured ribs on the left side, fractures of both sides of the lower jaw, bruising of the scalp, multiple superficial scratches and bruises on the face, neck, chest, and around the eyes. There was evidence of vaginal intercourse and indications of forcible anal intercourse.

STATE v. McKINNON

[328 N.C. 668 (1991)]

On 21 August 1987, police questioned defendant regarding both an alleged assault on his girlfriend, Patricia Lewis, and the death of Tammie Martin. During that interview, defendant indicated that he had spent the morning of 18 August at the public library and then had lunch at the soup kitchen. From there, defendant went to Weaver's Court Apartments and eventually started arguing with his girlfriend. According to defendant, the argument culminated with Lewis slapping defendant and striking him with a wine bottle. Defendant said he struck Lewis during the argument in self-defense. Afterwards, defendant played basketball at the recreation center until about 4:30 p.m., visited with a cousin at Lumbee Homes until around 2:00 a.m., and then walked home.

Also during the interview, defendant told SBI agent James Bowman that he knew the victim and that they had had sexual relations approximately three times during the summer. Defendant said the victim had a boyfriend and she did not want him to know that she and defendant had been seeing each other.

During a subsequent interview on 22 August 1987, defendant said he had been drinking beer and wine on and off on the day of the victim's death. At about 9:30 p.m., defendant saw the victim near MLK Drive talking with some friends. Defendant said "[h]ello" and the victim was friendly, saying she wanted to see him later. Defendant said that about ten or fifteen minutes later he and the victim were walking together discussing the problems they had with her boyfriend and his girlfriend. They then walked out into the garden on the vacant lot owned by Tommy McNeil and began playing and wrestling. According to defendant, they undressed and had sex. Subsequently, they resumed their conversation but began to argue. The victim slapped defendant in the face, he grabbed her, and they wrestled for five or six minutes. Defendant said he did not hit the victim. Eventually they stopped wrestling; the victim said she had to go home and began to get dressed. Defendant dressed and left, walking back towards MLK Drive where he met Vince McCall a few minutes later.

For the defendant, Aldo McRae testified that he saw the victim between 10:30 and 11:00 p.m. on the evening of 18 August. McRae testified that the victim said she was on her way home. McRae also testified that after seeing the victim, he encountered Dwight Bowden in the vicinity of Fred's Supermarket. Bowden was "talking crazy," saying "you can kill somebody" and that he knew a place

no one could find. Later that night McRae was jogging in the vicinity of the vacant lot where McKenneth's neighbor found the victim's body. On three separate occasions that evening McRae saw a blue Oldsmobile circling the area. McRae had previously seen Barry Robinson driving that car. The next day McRae saw both Robinson and Bowden at the recreation center shooting basketball. Robinson had what appeared to be fresh scratches or scars on his face, and he moved to stand behind McRae each time police drove by the area.

Three other witnesses testified on defendant's behalf. Defendant did not testify.

[1] Defendant first assigns as error the introduction by the State of testimony from Patricia Lewis regarding the incident on 18 August 1987, in which defendant allegedly assaulted Lewis. The police first took defendant into custody on 21 August 1987 for questioning on the alleged assault on Lewis. Following this interrogation, they arrested defendant and charged him with this assault.

Prior to defendant's trial for the murder of Tammie Martin, defendant made a motion *in limine* to prohibit the State from introducing evidence of the assault charge or the circumstances surrounding it. The trial court denied defendant's pretrial motion without prejudice to defendant's right to raise the issue at trial. When Lewis was called to testify regarding the details of defendant's alleged assault on 18 August, the trial court overruled defendant's objection and denied his motion to strike the testimony. Defendant argues that evidence of the prior alleged assault was not relevant and that any probative value was outweighed by its prejudicial effect. N.C.G.S. § 8C-1, Rules 402, 403, 404(b) (1988).

The challenged testimony was essentially as follows: At about 11:00 or 11:30 a.m. on 18 August 1987, Lewis walked with defendant and Dorothy Page from her apartment to the store to buy some wine. On the way to the store, defendant told Lewis he did not want her to be afraid of him and he would not do anything to her. On the way back, defendant jumped at Lewis to see if she was scared of him. Defendant again told her he would not hurt her, but then he hit Lewis and she fell in the street. Defendant then picked up Lewis by the neck and began hitting her in the head with the wine bottle. Lewis eventually ran away and called an ambulance. When the ambulance arrived to assist Lewis, she saw defendant walking down the sidewalk and noticed he had changed

clothes. Later that day, Lewis saw defendant at the hospital. Defendant approached Lewis, but left when Lewis reported defendant's presence to hospital personnel.

Defendant challenges the relevancy of Lewis's testimony, arguing that it tends to prove only that defendant has a violent propensity towards women. If so, the evidence would violate North Carolina Rule of Evidence 404, which states:

> (b) *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (1988).

The evidence at issue here, however, was "admissible for other purposes" in that Lewis's testimony served to clarify the ambiguity in defendant's statement to Vince McCall that he "beat this girl." On at least two occasions during defendant's trial the jury could have inferred that when defendant told McCall he "beat this girl," he was referring to the altercation between defendant and Patricia Lewis, not to the rape and murder of the victim here.

First, during defense counsel's cross-examination of McCall the following exchange took place:

Q. Now, when Danny was talking about the girl, he was talking about his girlfriend, Patricia Lewis; is that correct?

A. I have no idea who he was talking about, because he never stated a name.

Q. Didn't he mention his girlfriend?

A. No, he did not.

Although the questions by defense counsel did not constitute evidence, they did suggest to the jury that defendant's incriminating statement referred to the incident with Lewis, not to the killing of Tammie Martin. A defendant's cross-examination of a State's witness can open the door for the State to introduce evidence in rebuttal. *State v. Albert*, 312 N.C. 567, 578, 324 S.E.2d 233,

239-40 (1985); *State v. Pruitt*, 301 N.C. 683, 686-87, 273 S.E.2d 264, 267 (1981).

Second, on direct examination by the State, SBI agent Bowman testified from the notes of his interview with defendant as follows: "He [defendant] said that about ten or fifteen minutes after he left the garden he met up with Vince McCall and they rode around. He said that he told Vince about hitting his girlfriend, Patricia, earlier in the day . . . ." The State, having introduced a statement by defendant containing exculpatory material, is bound by that material unless it is contradicted or rebutted. *State v. Rook*, 304 N.C. 201, 227-28, 283 S.E.2d 732, 748 (1981) (quoting *State v. Carter*, 254 N.C. 475, 479, 119 S.E.2d 461, 464 (1961)), *cert. denied*, 455 U.S. 1038, 72 L. Ed. 2d 155 (1982); *State v. Johnson*, 261 N.C. 727, 730, 136 S.E.2d 84, 86 (1964) (per curiam). The details of Lewis's testimony were relevant to rebut or contradict the inference that defendant was referring to Lewis when he said "I beat this girl." Lewis's testimony highlighted the differences between the two incidents, showing especially that defendant allegedly assaulted her in the morning, that defendant's demeanor was relatively calm thereafter, and that the assault was nonsexual in nature. In light of Lewis's testimony, the jury reasonably could infer that defendant, in a "hysterical state" shortly after an aggressive sexual encounter with Tammie Martin, was referring to Martin rather than Lewis when he confided to Vince McCall that he "beat this girl." Thus, the challenged testimony was relevant and properly was admitted "for other purposes" under Rule 404(b).

Defendant argues that even if Lewis's testimony was relevant, its "probative value [was] substantially outweighed by the danger of unfair prejudice . . . ." N.C.G.S. § 8C-1, Rule 403 (1988). Application of Rule 403 to exclude relevant evidence is within the discretion of the trial court. *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986). The transcript of Lewis's testimony reveals that the trial court carefully limited the proffered testimony to serve the purpose of rebuttal. When the State's questions exceeded the scope of rebuttal, the court repeatedly sustained defense counsel's objections. We conclude that the trial court did not abuse its discretion and that defendant is not entitled to relief on this assignment of error.

Defendant next assigns as error the trial court's refusal to dismiss potential jurors John Oliver and Carmen Hayes for cause.

STATE v. McKINNON

[328 N.C. 668 (1991)]

The trial court denied defendant's pretrial motion to increase the number of peremptory challenges available to defendant. During jury selection defendant sought to challenge for cause potential juror Oliver on the basis that his responses to questioning indicated he might assign more credibility to law enforcement officers than to other witnesses. The trial court denied the challenge for cause and defendant exercised a peremptory challenge to remove Oliver. After exhausting his remaining peremptories, defendant sought to challenge for cause potential juror Hayes on the basis of conflicting responses regarding her ability to presume the innocence of defendant and to hold the State to its burden of proof that defendant was guilty beyond a reasonable doubt. The trial court denied the challenge for cause and denied defendant's subsequent motion for additional peremptories. Hayes ultimately sat on defendant's jury.

The trial court's rulings on challenges for cause are discretionary and will not ordinarily be disturbed on appeal. See State v. Kennedy, 320 N.C. 20, 26, 357 S.E.2d 359, 363 (1987); State v. Taylor, 304 N.C. 249, 267, 283 S.E.2d 761, 773 (1981), cert. denied, 463 U.S. 1213, 77 L. Ed. 2d 1398, reh'g denied, 463 U.S. 1249, 77 L. Ed. 2d 1456 (1983). Defendant exercised the peremptory challenges he was entitled to by statute. N.C.G.S. § 15A-1217(a)(1) (1988); see also State v. Johnson, 298 N.C. 355, 363, 259 S.E.2d 752, 758 (1979) (defendant has no right to greater than the statutory number of peremptories).

[2] Counsel for defendant sought to challenge for cause potential juror Oliver after the following exchange:

[Q.] In this case you're going to have testimony from people who are involved in law enforcement and people who are not, such as every day people who work and don't have any experience in the courtroom. My question to you is: Do you think that you would give more weight or tend to believe the testimony of a police officer more so than you would the testimony of Mr. Daniel McKinnon or any other witness who is not involved in law enforcement?

[A.] To be honest with you, that would be hard to answer right now. There is always the possibility you might would.

[Q.] So it is not an automatic thing that you would just believe a person because he's in law enforcement? Is that what you're saying?

[A.] Not really.

[Q.] Well, would you think that you would tend to believe a police officer more so than any other type of witness?

[A.] Possibly, to be honest with you. I'm saying due to the fact that he's supposed to be trained.

[Q.] You're saying just because you think a police officer, by their profession or training in investigation and law enforcement —

[A.] I'm saying possibly in that relation. I'm trying to be honest with you.

Later, counsel for defendant returned to this subject:

[Q.] Earlier, Mr. Oliver, you indicated that you might tend to favor the testimony of law enforcement officers. Is that still your position?

[A.] Maybe we misunderstood each other. I say I might.

[Q.] You might?

[A.] But I — I believe a man can spot the truth if you look for it. That's what I'm saying. I don't think anything is an automatic.

[Q.] Yes, sir.

[A.] That's what I'm trying to say.

[Q.] You think because of their training they are more believable than other witnesses, because of their training and experience?

[A.] Not necessarily so. What I am saying is that perhaps so.

Oliver's responses during voir dire indicated that he would not automatically give enhanced credence to testimony by any particular class of witness. Rather, certain factors in the witness's background, such as training or experience, would affect the credibility of that witness. This case is therefore not controlled by *State v. Lee*, 292 N.C. 617, 234 S.E.2d 574 (1977). In *Lee* this Court ordered a new trial where the trial court declined to excuse for cause a potential juror who admitted there was a possibility she would give more credence to the testimony of law enforcement officials. The Court stated: "Under the particular circumstances

of this case, we do not believe that juror Norvell could qualify as a disinterested and impartial juror." *Id.* at 625, 234 S.E.2d at 579. The circumstances that gave the Court concern in *Lee* were the witness's close relationship with several local police officers who might be testifying in the case, and the fact that her husband was a member of the local police department. In this case, there was no such significant relationship between potential juror Oliver and the testifying officers. The Court in *Lee* also took special notice of the fact that the only time Norvell said she could be fair and impartial was in response to direct questioning by the trial court. *Id.* Nothing in Oliver's responses indicated that he was partial or biased. *Cf. State v. Kennedy*, 320 N.C. at 27-28, 357 S.E.2d at 364 (potential juror excused after admitting that experience in Korea could affect ability to be fair or impartial). The trial court did not abuse its discretion in refusing to excuse potential juror Oliver for cause.

[3] Next, defendant argues that the trial court should have allowed his challenge for cause of juror Hayes after she gave conflicting and ambiguous responses to questions about whether she would hold the State to its burden of proof. The transcript of Hayes' voir dire indicates some confusion on her part during questioning, including agreement with a statement that she would require defendant to present evidence in his defense. Immediately following that response, however, she asked that the question be repeated. Hayes ultimately agreed three times that if the State did not meet its burden of proof she could find defendant not guilty even though he presented no witnesses in his behalf. The final exchange between Hayes and defense counsel was as follows:

> [Q.] You wouldn't have that in the back of your mind the fact that he didn't testify or call any witnesses?
>
> [A.] No, sir.
>
> [Q.] That wouldn't be of any concern? If it would, just tell us.
>
> [A.] No, sir, not if the State couldn't prove it.
>
> [Q.] Okay. And that's irregardless [sic] of whether he testifies or puts on any evidence?
>
> [A.] Yes, sir.

The responses of juror Hayes indicated that she would be able to hold the State to its burden of proof without requiring defendant

to present evidence; therefore, the trial court did not abuse its discretion in refusing to excuse her for cause. Defendant is not entitled to relief on this assignment of error.

For the foregoing reasons, we conclude that defendant received a fair trial free from prejudicial error.

No error.