STATE OF NORTH CAROLINA v. DENNIS MARSHALL CLEMMONS

No. COA05-1643

(Filed 16 January 2007)

## 1. Jury— challenge for cause—failure to make futile effort to challenge juror

The trial court did not abuse its discretion in a first-degree felony murder case by refusing to excuse two prospective jurors for cause, because: (1) a defendant must make a futile effort to challenge a juror after exhausting peremptory challenges in order to demonstrate prejudice, and it is insufficient for defendant to simply challenge a juror for cause, exhaust all peremptory challenges, and then renew his previous challenge for cause in order to preserve his exception; (2) during the process, defendant never challenged the twelfth juror or indicated that he would have used a peremptory challenge to excuse him if he had any peremptory challenges remaining; (3) although it is clear that defendant sought to have a peremptory challenge restored prior to passing on the twelfth juror, there is nothing in the record to indicate that he would have used that restored challenge to excuse that juror, and thus, defendant cannot show he was forced to seat a juror whom he did not want based on exhaustion of his peremptory challenges; and (4) assuming arguendo the trial court abused its discretion, any such error was without prejudice.

## 2. Evidence— prior crimes or bad acts—character for violence—failure to make offer of proof

The trial court did not err in a first-degree felony murder case by refusing to admit the cross-examination testimony of defendant's girlfriend (also the victim's daughter) regarding specific instances of violent threats by the victim against two other individuals, because: (1) defendant made no offer of proof concerning the proposed testimony, thus leaving the Court of Appeals to only speculate as to what the witness might have said; (2) the significance of the proposed testimony was not obvious from the record; and (3) the witness's testimony in no way indicated that defendant was aware of previous confrontations between the victim and men who mistreated the witness, so it was unclear whether the proposed testimony would have bolstered defendant's claim that he was reasonably afraid of the victim.

STATE v. CLEMMONS

[181 N.C. App. 391 (2007)]

**3. Appeal and Error— preservation of issues—failure to argue**

The remaining assignments of error that defendant failed to argue are deemed abandoned under N.C. R. App. P. 28(b)(6).

Judge HUDSON dissenting.

Appeal by defendant from judgment entered 5 May 2005 by Judge Steve A. Balog in Harnett County Superior Court. Heard in the Court of Appeals 20 September 2006.

*Attorney General Roy Cooper, by Special Deputy Attorney General Francis W. Crawley, for the State.*

*Marshall Dayan for defendant-appellant.*

CALABRIA, Judge.

Dennis Marshall Clemmons ("defendant") appeals from a judgment entered upon a jury verdict finding him guilty of first degree felony-murder. We find no error.

At trial in Harnett County Superior Court, Sonya Spears ("Spears") testified that she arrived home on the afternoon of 2 March 2004 and began arguing with her boyfriend, defendant, in the street. During the argument, defendant struck Spears in the head with a brick. Spears went to her uncle's home and telephoned her father, Thurman Allen ("the victim"), asking him to pick her up. Spears then returned and continued arguing with defendant, who snatched a necklace from her neck.

When the victim arrived, Spears and Danielle Clemmons ("Danielle") got into his pickup truck. Danielle is Spears' cousin and defendant's niece. The victim asked Spears who hit her, but she refused to identify her attacker. "[D]ad, let's just go, I don't want no trouble around here, I don't want you to get in no trouble, so let's just go," she stated. The victim asked defendant and his brother, Herbert ("Herbert"), whether they had hit Spears. They both answered no and defendant suggested the victim ask Spears.

The victim then started to get out of the truck, and Spears grabbed a shotgun that the victim carried on the floorboard of his truck. Defendant took out a handgun and began firing it at the victim, hitting him in the head, arm, hand, and hip. The medical examiner concluded that the victim died as a result of the gunshot to his hip,

which severed his aorta and inferior vena cava and caused severe internal bleeding.

Defendant testified that he had retrieved the handgun from his brother's mobile home after Spears told him the victim was coming to pick her up. Defendant had experienced prior confrontations with the victim in which the victim had warned him not to hit Spears. Further, defendant was aware that the victim once pulled a handgun on Cedric McCall ("McCall"), who was arguing with Spears, and another time came over with a shotgun to confront Herbert, who was then dating Spears.

Defendant stated that these encounters made him afraid the victim would attack him, prompting him to arm himself with a handgun. Defendant testified that he shot the victim in self-defense when the victim started to get out of his truck with the shotgun and continued firing when the victim got out of the truck and aimed the shotgun at defendant. Danielle's testimony tended to support defendant's version of events, as she stated that she saw the victim clutching the shotgun and chambering a shell before he fell to the ground. She stated that after the victim had fallen, defendant retrieved the victim's wallet and took the money. Defendant was arrested and charged with first degree murder and robbery with a dangerous weapon.

Following the trial, the jury returned a verdict finding defendant guilty of first degree felony-murder. Upon that verdict, Judge Steve A. Balog entered judgment, sentencing defendant to life imprisonment without parole. From that judgment, defendant appeals.

[1] On appeal, defendant initially argues that the trial court erred by refusing to excuse two prospective jurors for cause. He contends that the court's denial of his challenges for cause denied him the right to a trial by an impartial jury as guaranteed by the United States and North Carolina Constitutions, but because defendant did not raise these constitutional arguments before the trial court, we will not consider them on appeal. *State v. Smith*, 359 N.C. 199, 208-09 607 S.E.2d 607, 615 (2005). However, defendant also argues that the trial court abused its discretion in denying the challenges for cause and we conclude that defendant has preserved his right to bring forward this assignment of error pursuant to N.C.G.S. § 15A-1214(h) (2005).

During jury selection, a party may challenge a potential juror for cause on the ground that he is unable to render a fair and impartial verdict. N.C. Gen. Stat. § 15A-1212(9) (2005). *Id.* North Carolina

General Statute § 15A-1214 provides the "statutory method for preserving a defendant's right to seek appellate relief when a trial court refuses to allow a challenge for cause . . . and is the only method by which such rulings may be preserved for appellate review." *State v. Morgan*, 359 N.C. 131, 148, 604 S.E.2d 886, 897 (2004) (citation and quotation marks omitted).

North Carolina General Statute § 15A-1214(h) (2005) sets forth the method by which a defendant may seek reversal of a conviction where his juror challenges for cause were denied. That statute states in relevant part:

> (h) In order for a defendant to seek reversal of the case on appeal on the ground that the judge refused to allow a challenge made for cause, he must have:
>
> (1) Exhausted the peremptory challenges available to him;
>
> (2) Renewed his challenge as provided in subsection (i) of this section; and
>
> (3) Had his renewal motion denied as to the juror in question.
>
> (i) A party who has exhausted his peremptory challenges may move orally or in writing to renew a challenge for cause previously denied if the party either:
>
> (1) Had peremptorily challenged the juror; or
>
> (2) States in the motion that he would have challenged that juror peremptorily had his challenges not been exhausted.
>
> The judge may reconsider his denial of the challenge for cause, reconsidering facts and arguments previously adduced or taking cognizance of additional facts and arguments presented. If upon reconsideration the judge determines that the juror should have been excused for cause, he must allow the party an additional peremptory challenge.

*Id.*

Our courts have interpreted this statute as follows:

> Where the court has refused to stand aside a juror challenged for cause, and the party has then peremptorily challenged him, in order to get the benefit of his exception he must exhaust his remaining peremptory challenges, and then challenge another

juror peremptorily to show his dissatisfaction with the jury, and except to the refusal of the court to allow it.

*State v. Watson*, 310 N.C. 384, 396, 312 S.E.2d 448, 456 (1984) (citations omitted). This interpretation was recently affirmed in *State v. Campbell*, 359 N.C. 644, 617 S.E.2d 1 (2005). In that case, the Court noted that the defendant could not gain reversal of his conviction even if he demonstrated that the trial court abused its discretion in denying his juror challenges for cause because he failed to signal his dissatisfaction at the jury's composition by lodging unsuccessful challenges. *Id.* at 704-05, 617 S.E.2d at 38.

Based on the above statute and case law, it is clear that a defendant must make a futile effort to challenge a juror after exhausting peremptory challenges in order to demonstrate prejudice. It is insufficient for a defendant to simply challenge a juror for cause, exhaust all peremptory challenges, and then renew his previous challenge for cause in order to preserve his exception. "[A] defendant, in order to preserve his exception to the court's denial of a challenge for cause, must (1) exhaust his peremptory challenges and (2) *thereafter assert his right to challenge peremptorily an additional juror.*" *State v. Allred*, 275 N.C. 554, 563, 169 S.E.2d 833, 838 (1969) (emphasis added). "The purpose for challenging the additional juror is to establish prejudice by showing that appellant was forced to seat a juror whom he did not want because of the exhaustion of his peremptory challenges." *State v. Hartman*, 344 N.C. 445, 459-60, 476 S.E.2d 328, 336 (1996).

Here, defendant initially challenged jurors McFarland and Byrd for cause and was denied. Defendant then used two of his six peremptory challenges to excuse McFarland and Byrd and subsequently exhausted all remaining peremptory challenges. After eleven jurors were seated, defendant in an off-the-record bench conference renewed his challenges for cause and his motion was again denied by the court. Defendant then passed on the twelfth juror without objection.

During this process, the defendant never challenged the twelfth juror or indicated that he would have used a peremptory challenge to excuse him if he had any peremptory challenges remaining. The process was summarized in the following exchange:

THE COURT: . . . The defendant had renewed motions here at the bench with regard to jurors about which he had moved to excuse

for cause, and had been denied by the court. I believe that took place at a point in time after we had 11 jurors?

MR. REECE: That's correct, Your Honor.

THE COURT: And when the defendant—when the attorneys approached the bench, that was the subject matter here at the bench. The motion was renewed at a point in time where the defendant had used six peremptory challenges after a previous challenge for cause had been denied, and here at the bench renewed the motion to excuse those folks for cause. And that motion was denied, and is now documented on the record.

And then that occurred again when we were in selection for the alternate juror. Again, the defendant approached the bench, with opposing counsel, and moved to renew the challenge for cause on the jurors that the court had denied the challenge for cause, and that motion was renewed and challenge for cause was also denied. At which point in each case the defendant being without further peremptory challenges, and accepted the final juror on the original 12 and the alternate juror. Does that accurately reflect what occurred with the jury?

MR. REECE: Yes, sir, I believe it does.

THE COURT: Anything else you'd like to add?

MR. REECE: No, sir, I think that's an accurate statement.

Although it is clear that the defendant sought to have a peremptory challenge restored prior to passing on the twelfth juror, there is nothing in the record to indicate that he would have used that restored challenge to excuse that juror. As such, defendant cannot "show[] that [he] was forced to seat a juror whom he did not want because of the exhaustion of his peremptory challenges." This fact defeats the defendant's claim of prejudice. Thus, assuming *arguendo* that the trial court abused its discretion by denying the defendant's challenges of jurors McFarland and Byrd for cause, any such error amounted to error without prejudice. Accordingly, this assignment of error is overruled.

[2] Defendant next argues the trial court erred by refusing to admit the cross-examination testimony of Spears regarding specific instances of violent threats by the victim against McCall and Herbert. We disagree.

As a general rule, evidence of a victim's character is not admissible. The rule, however, has exceptions. An accused, for example, may introduce evidence of a pertinent trait of character of the victim that is relevant to an issue in the case. Where an accused argues that he acted under self-defense, the victim's character may be admissible for two reasons: to show defendant's fear or apprehension was reasonable or to show the victim was the aggressor.

*State v. Watson*, 338 N.C. 168, 187, 449 S.E.2d 694, 705-06 (1994). (citations and quotation marks omitted).

However, a defendant who is denied the opportunity to present evidence of a victim's character trait must take certain steps to preserve the issue for appellate review.

In order to preserve the exclusion of evidence for appellate review, the significance of the excluded evidence must be made to appear in the record and a specific offer of proof is required unless the significance of the evidence is obvious from the record. The reason for such a rule is that the essential content or substance of the witness' testimony must be shown before we can ascertain whether prejudicial error occurred. In the absence of an adequate offer of proof, we can only speculate as to what the witness' answer would have been.

*State v. Barton*, 335 N.C. 741, 749, 441 S.E.2d 306, 310-11 (1994) (internal citations and quotation marks omitted).

The relevant exchange in the record is set forth as follows:

[DEFENDANT'S COUNSEL]: . . . Did your father ever confront [McCall] about the way he treated you?

[Spears]: Cedric, yes, he had.

[DEFENDANT'S COUNSEL]: In fact, he pulled a shotgun on him, did he not?

[PROSECUTOR]: Objection.

THE COURT: Sustained.

[DEFENDANT'S COUNSEL]: You had a relationship with Herbert Clemmons?

[SPEARS]: Yes, I did.

[DEFENDANT'S COUNSEL]: That's [defendant]'s brother?

[SPEARS]: Yes, it was.

[DEFENDANT'S COUNSEL]: There came a time where you called your father because you didn't like the way Herbert was treating you?

[SPEARS]: Correct.

[DEFENDANT'S COUNSEL]: Your father came and confronted Herbert about it?

[SPEARS]: Correct.

[DEFENDANT'S COUNSEL]: Pulled a gun on him?

[PROSECUTOR]: Object.

THE COURT: Sustained.

Since defendant made no offer of proof concerning Spears' proposed testimony, this Court can only speculate as to what she might have said. The significance of the proposed testimony is not obvious from the record, which provides no guidance as to the subject matter of Spears' testimony or its relevance to defendant's claim of self-defense. Spears' testimony in no way indicates that defendant was aware of previous confrontations between the victim and men who mistreated Spears, so it is unclear whether Spears' proposed testimony could have bolstered defendant's claim that he was reasonably afraid of the victim. Because no offer of proof was made, we cannot know whether Spears would have answered that the victim had in fact pulled a gun on McCall and Herbert. Thus, there is no indication that defendant could have used the evidence to establish the victim's character for violence and demonstrate that the victim was the initial aggressor. Accordingly, this issue is not properly preserved for appellate review. Further, defendant's arguments relating to alleged constitutional violations were not preserved by timely objection at the trial court and will thus not be considered on appeal.

[3] Defendant has failed to argue his remaining assignments of error on appeal, and they are thus deemed abandoned pursuant to N.C. R. App. P. 28(b)(6) (2006). ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.")

No error.

Judge HUNTER concurs.

Judge HUDSON dissents in a separate opinion.

The Judges participated in this decision and submitted this opinion for filing prior to 1 January 2007.

HUDSON, Judge, dissenting.

The majority concludes that defendant has not preserved the issue of whether the trial court abused its discretion in denying his challenges for cause to two veniremembers. Because I believe that defendant has preserved his right to bring forward this assignment of error pursuant to N.C. Gen. Stat. § 15A-1214(h) (2004), I respectfully dissent.

During jury selection, a party may challenge a potential juror for cause on the ground that he is unable to render a fair and improper verdict. N.C. Gen. Stat. § 15A-1212(9) (2004). N.C. Gen. Stat. § 15A-1214 provides the "statutory method for preserving a defendant's right to seek appellate relief when a trial court refuses to allow a challenge for cause . . . and is the only method by which such rulings may be preserved for appellate review." *State v. Morgan*, 359 N.C. 131, 148, 604 S.E.2d 886, 896 (2004). N.C. Gen. Stat. § 15A-1214(h) states that:

In order for a defendant to seek reversal of the case on appeal on the ground that the judge refused to allow a challenge made for cause, he must have:

(1) Exhausted the peremptory challenges available to him;

(2) Renewed his challenge as provided in subsection (i) of this section; and

(3) Had his renewal motion denied as to the juror in question.

*Id.* Subsection (i) states that a party who has exhausted his peremptory challenges may move to renew a challenge for cause previously denied if the party had peremptorily challenged the juror or states in a motion that he would have done so if his challenges had not been exhausted. *Id.* Here, I conclude that defendant complied with N.C.

Gen. Stat. § 1214: he moved to excuse prospective jurors McFarland and Byrd for cause, he employed peremptory challenges to remove both from the jury after the court denied his motions for cause, he exhausted the peremptory challenges available to him, and he renewed his motions for cause as to the jurors in question, which motions the court denied.

"[I]n addition to preserving error, defendant must show error by (1) demonstrating that the trial court abused its discretion in denying the challenge, and (2) showing defendant was prejudiced by this abuse of discretion." *State v. Smith*, 359 N.C. 199, 206, 607 S.E.2d 607, 614 (2005), citing *State v. Grooms*, 353 N.C. 50, 68, 540 S.E.2d 713, 725 (2000), *cert. denied*, 534 U.S. 838, 151 L. Ed. 2d 54, 122 S. Ct. 93 (2001). In order to show prejudice, in addition to complying with the procedures of N.C. Gen. Stat. § 15A-1214, defendant must also have challenged an additional juror after exhausting his peremptory challenges. *State v. Hartman*, 344 N.C. 445, 459-60, 476 S.E.2d 328, 336 (1996). In some cases, our courts have referred to this challenge to an additional juror as requesting "an additional peremptory challenge." *State v. Call*, 349 N.C. 382, 402, 508 S.E.2d 496, 509 (1998). N.C. Gen. Stat. § 15A-1214(i) states that after a party moves to renew a challenge for cause previously denied:

> The judge may reconsider his denial of the challenge for cause, reconsidering facts and arguments previously adduced or taking cognizance of additional facts and arguments presented. If upon reconsideration the judge determines that the juror should have been excused for cause, he must allow the party an additional peremptory challenge.

*Id.* However, the official commentary refers to this as the "restoration of a previously used challenge . . . an attempt to exercise the peremptory challenge which the party asserts should be restored to him." *Id.* Thus, if the court grants the renewed motion for cause as to a juror previously peremptorily removed, the peremptory challenge that had been used to eliminate that juror would be restored. Indeed, although the trial court has authority "to restore a peremptory challenge . . . [it] ha[s] no authority to provide defendant with additional peremptory challenges." *State v. Smith*, 359 N.C. at 207-08, 607 S.E.2d at 615. I conclude that whether the party refers to this challenge to an additional juror as a renewed challenge for cause or a request for an "additional" peremptory is inconsequential: if the court grants the renewed challenge for cause, it will restore a peremptory challenge to

defendant. The essence of the requirement is that defendant "show[]
that [he] was forced to seat a juror whom he did not want because of
the exhaustion of his peremptory challenges." *State v. Hartman*, 344
N.C. at 459-60, 476 S.E.2d at 336.

Here, after the court denied defendant's motions to excuse
prospective jurors McFarland and Byrd for cause, defendant exer-
cised peremptory challenges to remove McFarland and Byrd.
Defendant also exercised four additional peremptory challenges, thus
exhausting the six peremptory challenges allowed by N.C. Gen. Stat.
§ 15A-1217(b)(1) (2004). After eleven jurors were seated and defend-
ant had exhausted all of his peremptory challenges, defense counsel
approached the bench during voir dire of the twelfth juror, Mr.
Leggett. Following an off-the-record bench conference, defendant
passed on Mr. Leggett, who had a pending DWI charge and whose
mother had been a crime victim. At the conclusion of jury selection,
the court stated that there were matters that needed to go on the
record outside the presence of the jury and stated for the record that
after eleven jurors were seated

> defendant had renewed motions here at the bench with regard
> to jurors about which he had moved to excuse for cause, and
> had been denied by the court . . . The motion was renewed at a
> point in time where the defendant had used six peremptory chal-
> lenges after a previous challenge for cause had been denied, and
> here at the bench renew the motion to excuse those folks for
> cause. And that motion was denied, and is now documented on
> the record. . . . *At which point . . . the defendant being without
> further peremptory challenges . . . accepted the final juror on
> the original 12.*

(Emphasis added). The clear implication of this excerpt is that
defendant only accepted the twelfth juror because he had no more
challenges. I thus conclude that defendant has adequately shown that
he "was forced to seat a juror whom he did not want because of the
exhaustion of his peremptory challenges." *Hartman*, 344 N.C. at 460,
476 S.E.2d at 336.

Further, I would conclude that the court abused its discretion in
denying defendant's motions for cause and would remand for a new
trial. It is well-established that we review the trial court's decision to
deny a challenge for cause for abuse of discretion. *See, e.g., State v.
Lee*, 292 N.C. 617, 621, 234 S.E.2d 574, 577 (1977). During voir dire,
prospective juror McFarland revealed that he had served as a police

officer for eleven years and had worked with some of the officers who were witnesses in this case. The prosecutor asked him if he would "be able to listen to the testimony of law enforcement officers with the same test of credibility as any witness that would testify," to which McFarland replied that "it would be difficult. All I can say is that this is my first time. I'd give it my best shot." During defense counsel's voir dire examination of McFarland, the following exchange took place:

Q: . . . would it be fair to say that you already had leanings or inclinations with respect to criminal cases where law enforcement is involved?

A: I just felt like that—although I'm not employed, per se, with the police now . . . I guess symbolically I feel like I'm part . . . of the team or some loyalty to it simply because I had worked with a lot of the guys and gone through some of this. That's basically what I feel.

Q: Sure. Let me ask you this. You indicated that with respect to the testimony of the law enforcement officers, you'd believe what they said?

A: Yes, sir.

Q: That's because the position that they occupy and because of your own personal feelings as part of a team or whatever?

A: Yes, sir.

Q: Okay. And that's as we sit here before you've even heard any testimony or heard any cross examination of any of the evidence?

A: I'm sorry?

Q: And you feel that way now before you've even heard anyone, any law enforcement officer testify, or anybody testify?

A: Well, it's the first time I've been on a jury, so all of it's new to me. But I'd do the best I can to be impartial and objective. Although it would be, like I stated before, it would be difficult in having worked with some of these guys that are here today.

* * *

Q: But as you're sitting there, you indicated that you already have some feelings about the testimony of law enforcement in this case?

A: Right.

Q: Okay. You feel like you're part of that team, so to speak?

A: Right.

Q: Would it be fair to say that, you know, that you might be leaning one way or the other just as we sit here without knowing anything else about it, not hearing anything, but that you might be leaning one way or the other in the case?

A: Well, I think when he called out the list of potential witnesses, and told—given the opportunity to—names of persons who I'm familiar with, such as Kenny Lee, Sergeant Jaggers, so forth, I think that persons I dealt with in law enforcement, I worked beside— . . . I think if they're on the stand that I would believe what they're saying, their testimony, based on my experience with those particular officers on the list.

* * *

Q: It would be difficult for you to set aside what you know about those officers already and base your verdict just on what you heard here, wouldn't you agree with me on that?

A: It would be difficult, but, again, having my first time, I'm more than willing to do my best and try to be objective.

Q: Sure. And I know you would try to be fair.

A: Right.

Q: But would you agree with me that it would be difficult for you to view these peoples' testimony through the same lens that you would view people you don't know—

A: I would agree that it probably would be difficult for any law enforcement officer in my position to come up here and do that, so it would put me in the same boat with them, yes.

Q: You feel like that might substantially impair your ability to be fair and impartial during this trial?

A: I stated before that I felt that it would be a problem, but, again, I'm willing to give it my best shot and listen to all testimony.

Q: Well, let me back up again and ask you again, or maybe a little different way, and I know you're trying to be fair. I know you want to be fair. You understand why I'm concerned?

STATE v. CLEMMONS

[181 N.C. App. 391 (2007)]

A: Oh, absolutely.

Q: And you understand that try as you might, that if it turned out you weren't able to view it impartially, it's really too late at that point?

A: Uh-huh.

Q: Do you feel like the fact that you already know some of these officers, the fact that you have indicated you don't think you could view their testimony quite the same as you could people you don't know—

A: I stated that I would believe them.

Q: Sure. Sure. And I didn't phrase it that way. I was trying to be a little more delicate. In fact you believe them, without hearing anything.

A: Right.

In *State v. Lee*, the North Carolina Supreme Court held that the trial court abused its discretion in failing to excuse a prospective juror for cause who had been married to a police officer for eleven years, had been on friendly terms and socialized with officers who worked with her husband, and who initially stated that she would tend to lend more credibility to the testimony of police officers than to the testimony of strangers. 292 N.C. 617, 234 S.E.2d 574. In *Lee*, the following exchanges occurred between defense counsel and the prospective juror and between the trial judge and the prospective juror:

Q. I ask you, Mrs. Norvell, since you know Mr. Moore and Tom Smith and your husband is on the Wilson Police Department, if they should testify in this case, would you tend to put more weight on what they said about the case than some witness you had never seen before?

A. I don't think so.

Q. But, you are not sure about that?

A. No, sir.

Q. It is possible that you might believe what they said more than somebody you didn't know.

A. I would have a tendency to.

Mr. Daughtridge: If the Court please, we would challenge her for cause.

Court: Let me ask you one or two things myself. I don't think anybody can make a positive statement as to who they would believe until they heard what they had to say. Do you have some genuine concern in your own mind that you might be swayed because of your husband's employment?

A. No, sir.

Court: Do you feel you could be fair and impartial and give to the defendant's testimony or that of his witnesses the same weight you would give to somebody else?

A. Yes, sir.

Court: I don't think you have established enough.

Q. But, I did understand you to say that knowing Mr. Moore and Mr. Smith, you might tend to believe them more than somebody you don't know at all?

Objection by Mr. Brown.

Overruled.

A. It's hard for me to say.

* * *

Q. I asked you do you feel that there is a genuine possibility by reason of your knowledge of Mr. Moore and Mr. Smith, that you might believe their testimony in this case more so than some witness who you had never seen before?

A. I don't think there's a genuine possibility.

Q. Well, is there a possibility, Mrs. Norvell?

A. There might be.

*Id.* at 576-77, 234 S.E.2d at 619-21.

In holding that the trial court erred, the Court noted that although "a juror's close relationship with a police officer, standing alone, is not grounds for a challenge for cause," because juror Norvell was a

police officer's wife and had been friendly with members of the police force, she "was subject to strong influences which ran counter to defendant's right to a trial by an impartial jury." *Id.* at 579, 234 S.E.2d at 625. The Court further noted that "Norvell initially stated that she would have a tendency to lend more credibility to the testimony of the police officers than to a stranger," and that she only stated that she could be impartial in response to a direct question by the trial judge. *Id.* Here, McFarland stated that he felt like he was part of the law enforcement team and repeatedly indicated that he would believe law enforcement officers based on his prior experiences with the officers and his feelings of loyalty to the law enforcement team. Although McFarland stated that he would do his best, he never indicated that he actually could be impartial. The State argues that our appellate courts have upheld the trial court's refusal to excuse jurors who stated that they would lend more credence to testimony of law enforcement officers. *State v. McKinnon*, 328 N.C. 668, 675-78, 403 S.E.2d 474, 478-79 (1991); *State v. Lynch*, 300 N.C. 534, 548, 268 S.E.2d 161, 169 (1980). However, in these cases there was no significant relationship between the prospective jurors and law enforcement, and more importantly, in each of these cases the prospective juror affirmed his or her ability to remain impartial. *McKinnon* at 675-78, 403 S.E.2d at 478-79, *Lynch* at 548, 268 S.E.2d at 169. McFarland's stated loyalty to the law enforcement team of which he had been a part for eleven years, his repeated statements that he would believe the officers' testimony before hearing it, and his failure to state that he could remain impartial lead me to conclude that "under the particular circumstances of this case," prospective juror McFarland could not "qualify as a disinterested and impartial juror." *Lee*, 292 N.C. at 625, 234 S.E.2d at 579. Thus, I would hold that the trial court abused its discretion in refusing to grant defendant's challenge for cause as to McFarland and that defendant is entitled to a new trial.

Because I would grant defendant a new trial, I would not address defendant's argument regarding prospective juror Byrd or his other assignment of error.