STATE OF NORTH CAROLINA v. WENDELL LEONDIAS HOUSE

No. 420A93-2

(Filed 5 May 1995)

## 1. Evidence and Witnesses § 1694 (NCI4th)— color photographs and slides of homicide victim's body—not unduly repetitive or prejudicial

Two photographs showing a murder victim's body as it was discovered, four photographs from the autopsy, and ten slides from the autopsy, all of which were in color, were not unfairly prejudicial or unduly repetitive, and defendant was not prejudiced by the manner in which they were presented to the jury, where they were admitted to illustrate the position and condition of the body when found and various injuries sustained by the victim when he was dragged behind defendant's logging truck. The photographs and slides were not irrelevant because defendant admitted dragging the victim behind his truck and leaving the victim on the side of the road since they supported the jury's finding that the murder was premeditated and deliberate.

**Am Jur 2d, Evidence §§ 963, 964; Homicide §§ 417 et seq.**

**Admissibility in evidence of colored photographs. 53 ALR2d 1102.**

**Admissibility in evidence of enlarged photographs or photostatic copies. 72 ALR2d 308.**

## 2. Evidence and Witnesses § 1730 (NCI4th)— videotape—admission for illustrative purposes

The trial court did not err by admitting a videotape illustrating testimony describing the route along which a homicide victim had been dragged behind defendant's logging truck and the location of blood along the route two days after the murder.

**Am Jur 2d, Evidence §§ 979-985, 987.**

**Admissibility of videotape film in evidence in criminal trial. 60 ALR3d 333.**

**Admissibility of visual recording of event or matter giving rise to litigtion or prosecution. 41 ALR4th 812.**

Admissibility of visual recording of event or matter other than that giving rise to litigation or prosecution. 41 ALR4th 877.

### 3. Jury § 203 (NCI4th)— first-degree murder—recent murder of juror's friend—denial of challenge for cause

The trial court did not err by denying defendant's challenge for cause of a potential juror in a first-degree murder trial on the basis that the recent murder of a friend of the juror could impair her ability to be fair and impartial in this case where the juror stated that she could follow the law and could separate the facts of her friend's murder from the one for which defendant was charged; on two occasions she stated that she would not be substantially impaired in her ability as a juror; and she stated that she would give defendant a fair trial and hold the State to its burden of proof.

Am Jur 2d, Jury §§ 266, 267, 291.

### 4. Constitutional Law § 309 (NCI4th)— ineffective assistance of counsel—concession of defendant's guilt—silent record as to defendant's consent—question not decided

The Supreme Court will not pass upon defendant's assignment of error that his right to the effective assistance of counsel was denied by his attorney's concession to the jury in closing argument that defendant was guilty of involuntary manslaughter or second-degree murder where the record is silent as to whether defendant consented to his attorney's concession of guilt. Defendant's appropriate remedy, if any, is to file a motion for appropriate relief in the superior court pursuant to N.C.G.S. § 15A-1415(b)(3) based upon ineffective assistance of counsel.

Am Jur 2d, Criminal Law §§ 752, 985-987.

Adequacy of defense counsel's representation of criminal client regarding argument. 6 ALR4th 16.

### 5. Evidence and Witnesses § 1070 (NCI4th)— instructions on flight—sufficient supporting evidence

The evidence in a first-degree murder trial was sufficient to support the trial court's instruction on flight as evidence of guilt where it showed that defendant left the scene of the murder and drove to his home in Virginia; after defendant became aware of injuries to the victim from being dragged behind defendant's log-

ging truck, defendant drove the victim to a deserted area and dropped the victim into a creek fifteen to eighteen feet off the road and at the bottom of a twenty-feet drop; and after defendant got home, his truck was cleaned up and painted so that there was no evidence of blood on the truck.

**Am Jur 2d, Evidence §§ 1430, 1431; Trial §§ 1333-1335.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing a sentence of life imprisonment entered by Llewellyn, J., at the 10 May 1993 Criminal Session of Superior Court, Nash County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 17 March 1995.

*Michael F. Easley, Attorney General, by William B. Crumpler, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

Indicted for the first-degree murder of J.D. Brinkley in violation of N.C.G.S. § 14-17, defendant was tried capitally and convicted as charged. Following a capital sentencing proceeding, the jury recommended that defendant be sentenced to life imprisonment; and the trial court entered judgment accordingly.

At trial the State's evidence tended to show that on 19 February 1992, defendant met the victim, J.D. Brinkley, in the Town of Spring Hope. The victim and defendant had been having a homosexual affair which defendant wanted to end. The victim wanted to continue the relationship and was threatening to tell defendant's wife. Defendant drove with the victim in defendant's logging truck to an isolated dirt road outside Spring Hope. The two argued. Defendant then tied the victim to his logging truck with a chain and drove around Spring Hope, dragging the victim behind the truck. Defendant eventually stopped his truck and threw the victim into a creek at the bottom of an embankment. The victim was later found lying facedown in approximately four inches of water. The cause of the victim's death was believed to be drowning; however, some evidence suggested that the victim may have died as the result of hypovolemic shock triggered by loss of blood. After disposing of the victim, defendant drove to his

home in Virginia not far from the North Carolina line. At some point before he was apprehended, defendant painted the back of his truck, blackened the tires, and cleaned it up so that the truck looked almost new. The State also presented evidence that on 16 February, as defendant was driving through Spring Hope, he saw the victim standing on the street; commenting to a passenger in the car about the way the victim was looking at him, defendant stated he would kill the victim.

Defendant testified that he did not know the victim but saw the victim standing on the side of the road on 19 February 1992. The victim flagged defendant down and asked if defendant would drive him home. The victim directed defendant to a dirt road and then, according to defendant, grabbed defendant between the legs and said that he wanted defendant "to suck him off." Defendant refused and told the victim to get out of his truck. When the victim refused to get out of the truck, defendant physically pulled the victim out of the truck and threw him to the ground. The victim then grabbed defendant from behind, and defendant broke loose, causing the victim to hit his head on the truck as the victim fell. Defendant then picked the victim up, placed him on a platform in the back of the truck, and wrapped a logging chain around him. Defendant further testified that he intended to drop the victim off in the same place that he had picked him up, but he got lost and could not find that location. At some point defendant realized the victim had fallen off the truck. Defendant stopped and put the victim back in the truck. He then drove around and eventually left the victim on the side of the road next to a ditch. Defendant testified that he saw a mailbox and a house nearby and thought someone would find the victim if he left him at that location.

Additional evidence will be presented as necessary to the understanding of a particular issue.

[1] Defendant first contends that the trial court erred in overruling defendant's objections to the admission and manner of presenting various gory and gruesome photographs of the victim. The State introduced twenty-six photographs, ten of which were slides, and a videotape. Defendant objected to two color photographs showing the body as it was discovered, four photographs from the autopsy, ten slides from the autopsy, and a videotape that tracked the route taken by defendant's vehicle on the night of the murder.

Defendant argues that the sixteen pictures at issue were minimally relevant and unfairly prejudicial for the reason that they were

in color rather than black and white, some were presented as slides rather than prints, and all were unnecessarily repetitive. Additionally, many of the pictures depicted the injuries to the victim resulting from his being dragged on the street, and illustration of these injuries was not relevant inasmuch as the victim drowned.

Defendant also argues that the manner in which the jury was shown the pictures was prejudicial. Specifically, the State should have used photographs instead of slides, should not have placed the screens for the slides so close to the jury box, and should not have allowed the pathologist to display photographs to the jury. When an alternate juror fainted during the slide presentation, defendant moved for a mistrial, which was denied.

As noted by defendant, *State v. Hennis*, 323 N.C. 279, 372 S.E.2d 523 (1988), sets out the standard by which the Court considers whether pictures are admissible. In *Hennis* the Court stated:

Photographs of a homicide victim may be introduced even if they are gory, gruesome, horrible or revolting, so long as they are used for illustrative purposes and so long as their excessive or repetitious use is not aimed solely at arousing the passions of the jury.

*Id.* at 284, 372 S.E.2d at 526.

The Court noted further in *Hennis* that

there is no bright line indicating at what point the number of crime scene or autopsy photographs becomes too great. The trial court's task is rather to examine both the content and the manner in which photographic evidence is used and to scrutinize the totality of the circumstances composing that presentation.

*Id.* at 285, 372 S.E.2d at 527.

"In a homicide case, photographs depicting the location and condition of the body at the time it was found are competent despite their portrayal of gruesome events which a witness testifies they accurately portray." *State v. Alford*, 339 N.C. 562, 577, 453 S.E.2d 512, 520 (1995). Additionally, photographs taken during an autopsy are generally deemed admissible, *State v. Skipper*, 337 N.C. 1, 35, 446 S.E.2d 252, 270 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 895 (1995), even if they are presented as slides rather than photographs, *see State v. Moseley*, 338 N.C. 1, 39, 449 S.E.2d 412, 435 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 738 (1995).

In the instant case, the challenged pictures showed the position of the body and its condition when discovered; damage done to the shoes the victim was wearing when being dragged behind the logging truck; and injuries to the victim's knees, face, lower abdomen, back, left arm, right arm, and heels. After reviewing the ten slides and six photographs objected to by defendant, the testimony that they were presented to illustrate, and the manner in which they were presented, we are of the opinion that the pictures were not unfairly prejudicial or unduly repetitive. The pictures were admitted to illustrate testimony describing where the body was found, the position of the body when found, and the various injuries sustained by the victim after the victim was dragged around the streets of Spring Hope.

Defendant argues that the pictures were not relevant because defendant admitted dragging the victim behind his truck and leaving the victim on the side of the road. We disagree. This Court has held that "[i]n a first-degree murder case, autopsy photographs are relevant even when such factors as the identity of the victim or the cause of death are not disputed." *Skipper*, 337 N.C. at 35, 446 S.E.2d at 270. Premeditation and deliberation are not readily susceptible to proof by direct evidence. "The nature and number of the wounds and evidence that the murder[] [was] done in a brutal manner are circumstances from which premeditation and deliberation can be inferred." *Id.* at 35, 446 S.E.2d at 271. In this case, the pictures illustrated testimony which supported a jury's finding that the murder was premeditated and deliberate.

[2] Defendant also objected to the presentation of a videotape showing the route along which the victim had been dragged. Our review of the transcript and videotape discloses that the videotape simply tracks the path defendant took on the night of the murder and was introduced to illustrate a witness' testimony describing the route the truck travelled and the location of blood along the route two days after the murder.

After reviewing the totality of the circumstances in which the videotape, photographs, and slides were admitted, we conclude the trial court did not abuse its discretion in admitting the evidence or denying defendant's request for a mistrial based on the presentation of the slides and photographs.

[3] Next, defendant argues that the trial court erred by failing to dismiss for cause potential juror Sharon Blount (Blount), thereby deny-

ing defendant his constitutional and statutory right to a neutral and unbiased jury.

During jury selection, defendant sought to challenge Blount for cause on the basis that the recent murder of a friend of Blount's could substantially impair her ability to be fair and impartial in this case. The trial court denied the challenge for cause, and defendant exercised a peremptory challenge to remove Blount. After exhausting his remaining peremptory challenges, defendant sought to challenge for cause potential juror Jenkins. The trial court also denied this challenge for cause. Pursuant to N.C.G.S. § 15A-1214(i), defendant renewed his challenge for cause as to Blount. When this challenge was again denied, he moved for additional peremptory challenges, which motion was also denied.

Counsel for defendant initially sought to remove Blount for cause after the following exchange:

MR. ALFORD [Defense counsel]: The fact that that happened [the murder of her friend] and that you knew the victim and all and that's going on in your mind, do you feel like that would substantially impair your ability to serve as a fair juror in this case?

MS. BLOUNT: Yes, I think it would.

The trial court then questioned the juror as follows:

THE COURT: Are you saying, ma'am, that the facts of that situation as [sic] such that it would spill over into this case and be part of your consideration as to this man's guilt or innocence?

MS. BLOUNT: Yes, I do. I don't see no justification for a human killing another human for no reason at all. . . .

. . . .

. . . I don't think I could sit here and listen to this case without thinking about my friend.

THE COURT:: So you're saying that those facts are such that . . . if you voted for first degree murder, you would not be able to consider life imprisonment as an option in this case?

MS. BLOUNT: Yes, I could.

The trial court then asked defendant to question Blount again, stating that the court thought she may have misunderstood the question. Defendant asked the following:

MR. ALFORD: Do you feel like the fact that you are aware of this case that's going on and you said it would stay on your mind during this case, do you feel like the fact that this is going on in your life now would substantially impair your ability to serve as a juror in this case?

MS. BLOUNT: No.

MR. ALFORD: You do not feel like it would substantially impair your ability?

MS. BLOUNT: No.

MR. ALFORD: Do you feel like that you can take the facts and circumstances of that case out of your mind and separate it from this case that we've got here?

MS. BLOUNT: Yes, I think I could.

Defendant again challenged Blount for cause, and his challenge was again denied.

The role of the trial judge in jury selection has been explicated as follows:

> It is the trial court's duty "to supervise the examination of prospective jurors and to decide all questions relating to their competency." *State v. Black*, 328 N.C. 191, 196, 400 S.E.2d 398, 401 (1991) (*quoting State v. Young*, 287 N.C. 377, 387, 214 S.E.2d 763, 771 (1975), *judgment vacated in part on other grounds*, 428 U.S. 903, 49 L. Ed. 2d 1208 (1976)). The trial court has the opportunity to see and hear the juror on *voir dire* and, having observed the juror's demeanor and made findings as to his credibility, to determine whether the juror can be fair and impartial. *See State v. Kennedy*, 320 N.C. 20, 26, 357 S.E.2d 359, 363 (1987). For this reason, among others, it is within the trial court's discretion, based on its observation and sound judgment, to determine whether a juror can be fair and impartial. *Id.* at 28, 357 S.E.2d at 364.

*State v. Yelverton*, 334 N.C. 532, 543, 434 S.E.2d 183, 189 (1993).

A review of the entire *voir dire* of venireperson Blount discloses that her ability to be fair and impartial was not compromised. Blount stated that she did not feel that defendant was guilty of something simply because he had been charged with a crime, and she agreed she could hold the State to its burden of proof beyond a reasonable doubt and return a verdict of not guilty if the State did not meet its burden

of proof. Blount also stated that she had not formed an opinion as to defendant's guilt or innocence and that she could keep an open mind and give defendant a fair trial. She further stated that she would be able to separate the facts of her friend's murder from the murder under consideration, would not be substantially impaired in her ability as a juror, and could give defendant a fair trial.

In support of his position, defendant cites *State v. Cunningham*, 333 N.C. 744, 429 S.E.2d 718 (1993), and *State v. Hightower*, 331 N.C. 636, 417 S.E.2d 237 (1992). We are not persuaded that this case is controlled by either of those cases. In *Hightower*, the juror stated that he could follow the law, but the fact defendant did not testify would stick in the back of his mind and might hinder his decision. *Id.* at 638-39, 417 S.E.2d at 239. This Court held it was error not to excuse the juror. *Id.* at 641, 417 S.E.2d at 240. Unlike Blount, the juror in *Hightower* never unequivocally said that he could give defendant a fair trial and would not consider defendant's silence against him, although he did state he would try to follow the law.

In *Cunningham* a juror stated that she felt that defendant had to prove he was innocent. 333 N.C. at 748, 429 S.E.2d at 720. Even after the law had been explained to her and the juror answered that she could follow the law, the juror's responses suggested that she would do so reluctantly; she stated that "if he doesn't want to prove his innocence, I would have to accept that." *Id.* at 752, 429 S.E.2d at 722. This Court held it was error not to excuse the juror in *Cunningham* because the juror was either confused about or fundamentally misunderstood the principles regarding the presumption of innocence. *Id.* at 754, 429 S.E.2d at 723. In *Cunningham* the Court distinguished *State v. McKinnon*, 328 N.C. 668, 403 S.E.2d 474 (1991), in which the Court held that it was not error to deny a challenge for cause when a juror originally stated on *voir dire* that she may require defendant to present evidence in his own behalf. The basis for distinguishing *McKinnon* was that the juror in *McKinnon*, " 'ultimately agreed *three times* that if the State did not meet its burden of proof she could find defendant not guilty even though he presented no witnesses in his behalf.' " *State v. Cunningham*, 333 N.C. at 755, 429 S.E.2d at 723 (quoting *State v. McKinnon*, 328 N.C. at 677, 403 S.E.2d at 479).

In this case, Blount unequivocally stated after further questioning that she could follow the law and that she could separate the facts of her friend's murder from the one for which defendant was charged. On two occasions, she stated she would not be substantially impaired

in her ability as a juror; she also stated she would give defendant a fair trial and hold the State to its burden of proof. On the record before us, the instant case is more nearly analogous to *McKinnon* and is distinguishable from *Cunningham* and *Hightower*. The following other cases also relied upon by defendant are likewise distinguishable: *State v. Leonard*, 296 N.C. 58, 248 S.E.2d 853 (1978) (holding error not to excuse for cause three jurors who were unwilling to accept an insanity defense); *State v. Lee*, 292 N.C. 617, 234 S.E.2d 574 (1977) (holding error not to remove for cause a juror whose husband was a police officer on the force with State's witnesses and who equivocated as to the effect this connection with the police would have on her ability to be impartial); and *State v. Allred*, 275 N.C. 554, 169 S.E.2d 833 (1969) (holding error not to remove for cause a juror who was a relative of two accomplices expected to testify for the State and who revealed he likely would be unable to disbelieve their testimony).

The record is clear that Blount ultimately felt she could put her feelings about her friend's murder aside and give defendant a fair trial based solely on the evidence presented in defendant's trial. Hence, the trial court's denial of defendant's challenge for cause was not error.

[4] Defendant, in his next assignment of error, contends that his state and federal constitutional right to effective assistance of counsel was violated by his lawyer's concession to the jury in closing argument that defendant was guilty of involuntary manslaughter or second-degree murder. Citing *State v. Harbison*, 315 N.C. 175, 337 S.E.2d 504 (1985), *cert. denied*, 476 U.S. 1123, 90 L. Ed. 2d 672 (1986), defendant argues that in the absence of an express waiver manifesting defendant's knowledge, understanding, and approval of defense counsel's concession of defendant's guilt, defendant is entitled to a new trial.

The record on appeal before this Court is silent as to whether defendant did or did not consent to his attorney's concession of guilt. This Court will not presume from a silent record that defense counsel argued defendant's guilt without defendant's consent. *See State v. Adams*, 335 N.C. 401, 410, 439 S.E.2d 760, 764 (1994) (holding that incompleteness in a record precludes a defendant-appellant from showing that an error occurred). Accordingly, we do not pass on this assignment of error. In this situation the appropriate remedy, if any, is for a defendant to file, either before or after direct appeal, a motion for appropriate relief in the superior court based upon ineffective

assistance of counsel pursuant to N.C.G.S. § 15A-1415(b)(3). We note specifically that our ruling herein is without prejudice to this defendant's right to file such motion. Further, we take this opportunity to urge both the bar and the trial bench to be diligent in making a full record of a defendant's consent when a *Harbison* issue arises at trial.

**[5]** Finally, defendant argues that the trial court erred by instructing the jury on "flight" as evidence of guilt. During the charge conference, the prosecutor requested that the trial judge instruct, pursuant to N.C.P.I.—Crim. 104.36, that flight is evidence indicating consciousness of guilt. Defendant objected to the instruction, but his objection was overruled. The trial court instructed the jury that:

> The State contends in this case that the defendant fled. Evidence of flight may be considered by you together with all other facts and circumstances in this case in determining whether the combined circumstances amount to an admission or show of consciousness of guilt. However, proof of this circumstance is not sufficient in itself to establish the defendant's guilt. Further, this circumstance has no bearing on the question of whether the defendant acted with premeditation and deliberation, therefore, it must not be considered by you as evidence of premeditation or deliberation.

Defendant argues that the evidence in the record is insufficient to support an instruction on flight. Although the evidence at trial showed that defendant went home to Virginia after the murder occurred, defendant urges that the evidence does not support an inference that this action by defendant was motivated by guilt or amounted to flight from justice since defendant lived in Virginia and had no connections to Spring Hope beyond a few personal and business acquaintances.

> A trial court may properly instruct on flight " '[s]o long as there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged.' " *State v. Green*, 321 N.C. 594, 607, 365 S.E.2d 587, 595 (quoting *State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977)), *cert. denied*, 488 U.S. 900, 102 L. Ed. 2d 235 (1988). "[T]he relevant inquiry [is] whether there is evidence that defendant left the scene of the murder and took steps to avoid apprehension." *State v. Levan*, 326 N.C. 155, 165, 388 S.E.2d 429, 434 (1990).

STATE v. HOUSE

[340 N.C. 187 (1995)]

*State v. Moseley,* 338 N.C. at 36, 449 S.E.2d at 434. In *Moseley* the Court held that the jury could have reasonably inferred flight from the evidence that defendant left the victim in a secluded area, without identification; left the scene; and was not apprehended for over three months. *Id.* at 37, 449 S.E.2d at 434.

We conclude that the evidence in the present case is also sufficient to support an instruction on flight. Defendant left the scene of the murder and drove to his home in Virginia. Before he went home, defendant took steps to avoid apprehension. Defendant's own evidence shows that once he became aware of injuries to the victim, defendant did not leave the victim where he found him; rather, he put the victim back into the truck and drove to a deserted area. Defendant then dropped the victim into a creek fifteen to eighteen feet off the road and at the bottom of a fifteen- to twenty-foot drop. This evidence supports an inference that defendant left the body where he did to avoid apprehension. The evidence also shows that after defendant got home, but before he was arrested, his truck had been cleaned up and painted so that there was no evidence of blood on the truck. As the evidence suggests "that defendant left the scene of the murder and took steps to avoid apprehension," *State v. Levan,* 326 N.C. at 165, 388 S.E.2d at 434, the trial court did not err in giving an instruction on flight.

Defendant also argues that the circumstances under which our appellate courts have upheld giving the flight instruction are so broad and varied as to render the concept of flight as evidence of guilt essentially meaningless. In *State v. Jefferies,* 333 N.C. 501, 509-10, 428 S.E.2d 150, 154 (1993), in response to an almost identical argument, this Court declined to reconsider the rules on flight as established by our prior cases. Defendant has presented no persuasive reason to revisit our decision in *Jefferies* at this time.

Having reviewed the trial transcript and the objected-to photographs, slides, and videotape, as well as the other issues raised by defendant before this Court, we conclude that defendant received a fair trial free from prejudicial error.

NO ERROR.