STATE OF NORTH CAROLINA v. MICHAEL JEROME BRAXTON

No. 551A94

(Filed 8 November 1996)

**1. Evidence and Witnesses § 1278 (NCI4th)— first-degree murder—defendant's statement—waiver of rights**

There was no error in a capital prosecution for first-degree murder and other crimes in which the death penalty was not recommended where defendant's motion to suppress his confessions and statements to law enforcement officers was denied. The evidence in the record from a hearing on remand supports the trial judge's findings and conclusions that defendant was not improperly interrogated and that he did not invoke his right to counsel where defendant was immediately informed of his *Miranda* warnings upon his initiating conversation and was silent for the remainder of the ride; defendant neither made statements to nor requested an attorney from the detective while being transported to the police station; his only comments involved the crimes for which he was charged, information that could have been estab-

STATE v. BRAXTON

[344 N.C. 702 (1996)]

lished from the arrest warrants alone; defendant was again informed of his rights at the police station; and the court found that he knowingly, intelligently and voluntarily waived them and signed a waiver form.

**Am Jur 2d, Criminal Law § 797.**

**Comment Note.—Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation. 10 ALR3d 1054.**

2. **Criminal Law § 537 (NCI4th)— first-degree murder—audience wearing badges—photographs of victim—mistrial denied**

The trial court did not err in a prosecution for first-degree murder and other crimes by not declaring a mistrial on the grounds that members of the audience were wearing badges with photographs that defendant alleged were of one of the victims. There are no facts in the record showing the number and identity of the spectators wearing the buttons, the identity of the person shown in the photograph, whether the jury noticed the buttons; there was no showing that the individuals in the audience belonged to a well-known organization; and there was no evidence that the badges exclaimed a specific message. Where the record is incomplete or silent, the reviewing court will not presume the facts to be as the party contends; here the record is incomplete and the Supreme Court will not assume a relationship between the murder victims and the spectators wearing badges and thereby infer their intention to influence the jury's verdicts.

**Am Jur 2d, Trial §§ 254, 255.**

**Coaching of witness by spectator at trial as prejudicial error. 81 ALR2d 1142.**

3. **Evidence and Witnesses § 929 (NCI4th)— first-degree murder—statement by accomplice—spontaneous declaration**

The trial court did not err in a prosecution for first-degree murder and other crimes by allowing one of defendant's accomplices to testify that another accomplice had said, after defendant and that accomplice returned to the car from the convenience store where the first shooting occurred, "I didn't believe you would shoot him." The hearsay declarant had just been involved in a double robbery and had just witnessed the shotgun shooting

STATE v. BRAXTON

[344 N.C. 702 (1996)]

of an innocent being. He and defendant ran out of the store, jumped in the getaway car, hollered at the driver to go, and at that point the accomplice made the statement to defendant; clearly, the declarant was still experiencing the witnessing of an extremely startling event and there was no time to reflect on his thoughts or fabricate a story, thus making the declaration spontaneous. N.C.G.S. § 8C-1, Rule 803(2) (1992).

**Am Jur 2d, Evidence § 685.**

**Comment Note.—Spontaneity of declaration sought to be admitted as part of *res gestae* as question for court or ultimately for jury. 56 ALR2d 372.**

**Time element as affecting admissibility of statement or complaint made by victim of sex crime as *res gestae*, spontaneous exclamation, or excited utterance. 89 ALR3d 102.**

**Necessity, in criminal prosecution, of independent evidence of principal act to allow admission, under *res gestae* or excited utterance exception to hearsay rule, of statement made at time of, or subsequent to, principal act. 38 ALR4th 1237.**

4. **Criminal Law § 113 (NCI4th)— first-degree murder—witness's statement—failure to disclose—mistrial denied**

The trial court did not abuse its discretion, particularly under these circumstances, by denying defendant's motion for a mistrial in a prosecution for first-degree murder and other crimes where defendant's girlfriend testified concerning a statement made to her by defendant and defendant argued that the State failed to disclose the substance of the statements, but the motion for a mistrial was not filed until after the jury returned its verdicts and defendant articulated the specific basis for his objection only then. Defendant's own delay prevented the trial court from any timely consideration of the challenged testimony. N.C.G.S. § 15A-903(a)(2).

**Am Jur 2d, Trial § 1746.**

5. **Homicide § 506 (NCI4th)— felony murder—three robberies—instruction not ambiguous—judgment arrested on one only**

The trial court did not err by denying defendant's motion to arrest judgment on each of the robbery convictions underlying

### STATE v. BRAXTON

[344 N.C. 702 (1996)]

defendant's felony murder conviction where the trial court arrested judgment in the case of the robbery which was the basis of the felony murder conviction. Although defendant maintained that the trial court's instruction was ambiguous and that it is impossible to determine which of the three robberies the jury relied upon in reaching its murder conviction, the instructions viewed in their entirety clearly informed the jury that the felony underlying the murder was the robbery of the murder victim and no other.

## Am Jur 2d, Homicide §§ 498, 506.

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from judgments imposing two consecutive sentences of life imprisonment entered by Barnette, J., at the 16 May 1994 Criminal Session of Superior Court, Wake County, upon jury verdicts finding defendant guilty of two counts of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments imposed for robbery with a firearm and first-degree kidnapping was allowed 10 July 1995. Heard in the Supreme Court 12 March 1996.

*Michael F. Easley, Attorney General, by Francis W. Crawley, Special Deputy Attorney General, for the State.*

*Daniel Shatz for defendant-appellant.*

LAKE, Justice.

The defendant was indicted on 8 March 1993 for two counts of first-degree murder, three counts of robbery with a dangerous weapon and one count of first-degree kidnapping. The defendant was tried capitally, and the jury found him guilty of the first-degree murder of Emmanuel Oguayo on the basis of the felony murder rule. He was also found guilty of the first-degree murder of Donald Ray Bryant on the basis of malice, premeditation, and deliberation and under the felony murder rule. In addition, defendant was convicted of three counts of robbery with a firearm and one count of first-degree kidnapping. Following a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended a sentence of life imprisonment for the murder of Emmanuel Oguayo but was unable to reach a unanimous recommendation for sentencing in the murder of Donald Bryant. Defendant received the mandatory life sentence for each murder, these to run consecutively, and consecutive sentences of forty, forty and thirty years on two counts of armed robbery and second-

degree kidnapping. The trial court arrested judgment on one count of armed robbery and as to first-degree kidnapping. For the reasons discussed herein, we conclude that defendant received a fair trial, free from prejudicial error.

The State's evidence tended to show that on 12 February 1993, defendant Michael Jerome Braxton and two other men, Kjellyn Leary and Robin Moore, drove around Raleigh while they talked about finding people to rob. They went to a party near Saint Augustine's College for this purpose. Moore had a shotgun in an orange duffel bag. One of the victims, Donald Bryant, walked up to defendant and asked if he had any crack cocaine. Defendant told Bryant he did not have any. As Bryant walked back to his car, Moore pulled the shotgun on Bryant and made him get into the backseat. Defendant and Leary also got into Bryant's car. Defendant went through Bryant's pockets and took twenty dollars and two marijuana cigarettes. Defendant, Leary and Moore later decided to put Bryant in the trunk of the car.

After smoking the marijuana cigarettes and drinking two twelve-packs of beer they bought with the money taken from Bryant, Moore drove to a Fast Fare in North Raleigh and parked behind the building. Leary and defendant went inside the store while Moore waited in the car. Defendant carried the shotgun. Defendant walked up to Lindanette Walker, a customer in the store, and told her to get on the floor. He took her coat, watch and pocketbook. Meanwhile, the store clerk, Emmanuel Oguayo, began to fight with Leary. Defendant ran behind the counter, aimed the shotgun at Oguayo and pulled the trigger. The shotgun failed to fire. Defendant then reloaded and fired, this time hitting Oguayo in the abdomen. Defendant and Leary ran back to the car, got in and shouted at Moore to "go." Moore drove away. As they were driving down the road, Leary said to defendant, "I didn't believe you would shoot him." An audit of the cash register revealed that ninety-eight dollars was missing. Oguayo died from the wound.

Later that night, defendant and Leary drove to some woods in North Raleigh. Defendant got Bryant out of the trunk and shot him in the head. Bryant died instantly.

On either Valentine's Day or the day after, defendant gave his girlfriend, Letita Bridges, a leather coat and a watch. Sometime after giving Bridges the coat and watch, defendant told Bridges that he shot "some guy" at the Fast Fare. He said he did not know why. Thereafter, Bridges gave the police the coat and the watch. They were identified as being objects stolen from Lindanette Walker.

**STATE v. BRAXTON**

[344 N.C. 702 (1996)]

On 17 February 1993, Detective Gabriel Sanders of the Raleigh Police Department was driving south on South Blount Street when defendant's father motioned for him to stop. Defendant's father told Detective Sanders that his son had been involved in the commission of some crimes and wanted to turn himself in to the police. Detective Sanders radioed the Raleigh Police Department and confirmed the existence of an outstanding arrest warrant. Detective Sanders then took defendant into custody, handcuffed him and placed him in Detective Sanders' vehicle.

Defendant informed Detective Sanders that the charges against him concerned a robbery and murder in North Raleigh. Defendant then tried to begin a conversation with Detective Sanders. Because of the seriousness of the charges, Detective Sanders immediately advised defendant of his *Miranda* rights. The warnings were given verbally from Detective Sanders' memory, and included the right to remain silent, the warning that anything the defendant said could be used against him, the right to have a lawyer present, the right to have a lawyer appointed if he could not afford one, and the right to stop answering questions at any time. After being advised of his rights, defendant was silent for the remainder of the ride to the police station. He did not make any statements, nor did he request to talk with a lawyer or have a lawyer appointed. Detective Sanders also did not ask defendant any questions. There was no conversation between the two from the time of the *Miranda* warnings until the time Detective Sanders left defendant at the fourth floor of the Raleigh Police Department.

Upon arrival at the fourth floor of the police department, defendant was taken to an interview room. Detectives Malley Bissette and William Liles interviewed the defendant for approximately fifty minutes. At the beginning of the interview, Detective Bissette explained to the defendant his *Miranda* rights from a preprinted form of the Raleigh Police Department. The defendant indicated he understood his rights and signed the form acknowledging that he understood and desired to talk with the officers. He gave a statement in which he admitted robbing Lindanette Walker and shooting Emmanuel Oguayo. Defendant also admitted he shot Donald Bryant in the head. Defendant later assisted the police in locating the body of Donald Bryant.

[1] In his first assignment of error, defendant contends the trial court erred by denying defendant's motion to suppress his confessions and

STATE v. BRAXTON

[344 N.C. 702 (1996)]

statements made to law enforcement officers. Specifically, defendant contends that there was insufficient evidence to support the trial court's finding that defendant was advised of his *Miranda* rights and that he voluntarily waived them. Defendant asserts that law enforcement officers initiated custodial interrogation before reading him his rights. He also maintains that he requested an attorney at his first contact with law enforcement. Therefore, he contends subsequent interrogation initiated by the officers was not voluntary, making the statements inadmissible. Upon careful review of the record, we conclude this assignment of error is without merit.

Statements made by a defendant resulting from custodial interrogation are admissible at trial only if, prior to questioning, the defendant has been fully advised of his rights to remain silent and to have counsel present during questioning. These rights may be waived by a defendant by a voluntary, knowing and intelligent waiver. *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966). "The ultimate test of the admissibility of a confession is whether the statement was in fact voluntarily and understandingly made." *State v. Davis*, 305 N.C. 400, 419, 290 S.E.2d 574, 586 (1982). *Miranda* and *Edwards v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 378 (1981), together establish that custodial interrogation must cease when an accused requests an attorney and may not be resumed by police officers without an attorney present unless the interrogation is thereafter initiated by the accused. A suspect is in custody when, considering the totality of the circumstances, "a reasonable person in the suspect's position would [not] feel free to leave at will [but would] feel compelled to stay." *State v. Medlin*, 333 N.C. 280, 291, 426 S.E.2d 402, 407 (1993).

On defendant's motion *in limine*, a pretrial hearing was conducted before Judge Robert Farmer on 10 December 1993, to determine the admissibility of defendant's custodial statements. Evidence was presented by the State and the defendant. Defendant himself testified at the hearing, asserting breach of his constitutional rights under *Miranda*. At the close of the evidence, Judge Farmer made findings of fact and conclusions of law that defendant was fully informed of his constitutional rights and knowingly and voluntarily waived them, and ruled that the statements were given knowingly, intelligently and voluntarily and were therefore admissible. Later, at trial, defendant renewed his motion to suppress, contending that the statements to police were made after he had invoked his right to an attorney and were, therefore, inadmissible.

**STATE v. BRAXTON**

[344 N.C. 702 (1996)]

Following a hearing on a motion to suppress evidence, the trial court must make findings of fact and conclusions of law. If supported by competent evidence, the trial court's findings of fact are conclusive on appeal. "If there is a conflict between the [S]tate's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict and such resolution will not be disturbed on appeal." *State v. Chamberlain*, 307 N.C. 130, 143, 297 S.E.2d 540, 548 (1982).

Because, in the instant case, it was unclear from the record and from the trial court's findings of fact and conclusions of law as to whether defendant invoked his right to counsel, we remanded for a further hearing and findings of fact with respect to the *Edwards* issues of custody and request for counsel. Judge Farmer presided over this further hearing, at which the State presented the testimony of Detective Sanders. Defendant was present at the hearing but did not testify or offer evidence on his own behalf. Defendant's counsel did cross-examine Detective Sanders. The trial court made additional findings of fact that defendant was advised of his *Miranda* rights by Detective Sanders, that there was no custodial interrogation by Detective Sanders at any time, and that defendant did not request an attorney during transport to the police station by Detective Sanders.

The evidence in the record from this further hearing supports Judge Farmer's findings of fact and conclusions of law that the defendant was not improperly interrogated and that he did not invoke his right to counsel in transit to the police department or later at the station. Defendant was immediately informed of his *Miranda* rights upon his initiating conversation, and he was silent for the remainder of the ride. He neither made statements to nor requested an attorney from Detective Sanders while being transported to the police station. Defendant's only comments involved the crimes for which he was charged, information that could have been established from the arrest warrants alone. Defendant was again informed of his rights at the police station, and the trial court found that he knowingly, intelligently and voluntarily waived them and signed a waiver form. Thus, the trial court's findings and conclusions are supported by competent evidence, and we find no error in the denial of defendant's motion to suppress.

[2] In his next assignment of error, defendant contends that the trial court erred by denying his motion for a mistrial on the grounds that members of the audience were wearing badges that appeared to be

photographs of one of the victims. Defendant argues that the wearing of badges by spectators was an attempt to influence the jury and was inherently prejudicial to defendant's right to a fair trial. We disagree.

The trial court is authorized to control the conduct of spectators in the courtroom. N.C.G.S. §§ 15A-1033, -1034 (1988). Although this issue appears to be one of first impression in North Carolina, defendant cites several cases from other states where the wearing of certain items of clothing or accessories led to declarations of mistrial. *Woods v. Dugger*, 923 F.2d 1454 (11th Cir.) (presence of numerous uniformed prison guards in the audience of a trial for the murder of a prison guard deprived defendant of a fair trial), *cert. denied*, 502 U.S. 953, 116 L. Ed. 2d 355 (1991); *Norris v. Risley*, 918 F.2d 828 (9th Cir. 1990) (presence of female spectators wearing large buttons with the slogan "women against rape" in the audience of a trial for kidnapping and sexual intercourse without consent deprived defendant of a fair trial); *State v. Franklin*, 174 W. Va. 469, 327 S.E.2d 449 (1985) (wearing by several spectators, including the sheriff, of MADD lapel buttons in trial for driving under the influence resulting in death deprived defendant of a fair trial).

We find these rulings distinguishable from the present case. There are no facts in the record showing the number and identity of the spectators wearing the buttons, the identity of the person shown in the photograph, and whether the jury even noticed the buttons. There was no showing that the individuals in the audience belonged to a well-known organization, such as MADD, NOW, or the Rape Task Force, or that they were prison guards. Similarly, there is no evidence that the badges exclaimed a specific message. The trial judge was left merely to assume that the people were members of the victims' families and that the photographs were of the victims. The trial judge even commented that he did not know how the jury could have known who was shown in the photographs.

Where the record is incomplete or silent, the reviewing court will not presume the facts to be as a party contends. *State v. House*, 340 N.C. 187, 456 S.E.2d 292 (1995). The record in this case is incomplete, and this Court will not assume a relationship exists between the murder victims and the spectators wearing the badges and thereby infer their intention to influence the jury's verdicts. As a result, we find no error in the trial court's exercise of discretion regarding the wearing of buttons with photographs in this case. This assignment of error is overruled.

**[3]** Defendant also assigns error to the trial court's allowing Robin Moore to testify to a statement made by Kjellyn Leary. Moore testified that after the defendant and Leary returned to the car, Leary stated, "I didn't believe you would shoot him." Defendant contends that this was a hearsay statement not covered by any exception and that it should have been disallowed. This assignment of error is without merit.

Any hearsay statement, as defined in N.C. R. Evid. 801(c), is "inadmissible except as provided by statute or the rules of evidence." *State v. Rogers*, 109 N.C. App. 491, 498, 428 S.E.2d 220, 224, *cert. denied*, 334 N.C. 625, 435 S.E.2d 348 (1993), *cert. denied*, 511 U.S. 1008, 128 L. Ed. 2d 54 (1994); *see also* N.C.G.S. § 8C-1, Rule 802 (1992). A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition is admissible as an exception to the hearsay rule, whether or not the declarant is available as a witness. N.C.G.S. § 8C-1, Rule 803(2) (1992). This Court has held that for a statement to be admitted as an excited utterance, "there must be (1) a sufficiently startling experience suspending reflective thought and (2) a spontaneous reaction, not one resulting from reflection or fabrication." *State v. Smith*, 315 N.C. 76, 86, 337 S.E.2d 833, 841 (1985).

In this case, the hearsay declarant Leary had just been involved in a double robbery and had just witnessed the shotgun shooting of an innocent being. He and defendant ran out of the store, jumped in the getaway car, and hollered at the driver Moore to "go." It was at this point that Leary made the statement "I didn't believe you would shoot him" to defendant. This statement itself evidences surprise. Clearly, Leary was still experiencing the witnessing of an extremely startling event, the shooting of another person. There was no time to reflect on his thoughts or fabricate a story between the shooting and the actual statement, thus making the declaration spontaneous. Hence, Moore's testimony regarding the statement fits squarely within the excited utterance exception to the hearsay rule and was properly admitted. This assignment of error is overruled.

**[4]** Defendant next asserts that the trial court erred by overruling defendant's objection to Letita Bridges' testimony concerning a statement made to her by defendant and by denying defendant's later motion for a mistrial on that ground. Defendant argues that the State was aware that Bridges would testify that defendant admitted to her that he shot Oguayo and that the failure to disclose the substance of

the statements pursuant to N.C.G.S. § 15A-903(a)(2) serves as grounds for a mistrial. We disagree.

"Sanctions for failure to make timely discovery are within the sound discretion of the trial court and will not be disturbed absent a showing of abuse of discretion." *State v. Wynne*, 329 N.C. 507, 521, 406 S.E.2d 812, 819 (1991). In this case, the trial court considered the motion at length. Further, the motion for mistrial was not filed until after the jury returned its verdicts, and it was only then that defendant articulated the specific basis for his objection. Thus, defendant's own delay prevented the trial court from any timely consideration of the challenged testimony. The record does not disclose any abuse of discretion by the trial court, particularly under these circumstances. This assignment of error is overruled.

[5] Finally, defendant argues that the trial court erred by denying defendant's motion to arrest judgment on each of the robbery convictions underlying his felony murder conviction. Defendant was convicted of three separate counts of robbery with a dangerous weapon against Emmanuel Oguayo, Lindanette Walker and Donald Bryant. At sentencing, defendant moved to arrest judgment as to these convictions. The trial court arrested judgment in the case of robbery against Oguayo because it was the felony submitted to the jury as the basis of the first-degree murder conviction under the felony murder theory. Defendant now contends that the trial court also should have arrested judgment as to his robbery convictions of Walker and Bryant. Defendant maintains that the trial court's instructions were ambiguous because the jury was not instructed specifically that Oguayo had to be killed during the robbery committed against him. Because of this alleged ambiguity, defendant claims that it is impossible to determine which of the three robberies the jury relied upon in reaching its murder conviction. We do not agree with defendant's characterization of the instructions as ambiguous.

The trial court instructed the jury on the theory of felony murder with regard to Emmanuel Oguayo as follows:

> I charge for you to find the defendant guilty of first-degree murder under the theory of the Murder Felony Rule [sic], the State must prove three things beyond a reasonable doubt: First, that the defendant, Michael Jerome Braxton, committed or attempted to commit or was acting in concert with someone who was committing or attempted to commit—to commit robbery. . . . And, second, that while committing or attempting to commit the

[344 N.C. 713 (1996)]

robbery or acting in concert with someone who was attempting or committing or attempting to commit robbery, that the defendant, Michael Jerome Braxton, killed Emmanuel Oguayo with a deadly weapon. And, third, that the defendant's act was a proximate cause of Emmanuel Oguayo's death. A proximate cause, like I have told you, is a real cause, a cause without which Emmanuel Oguayo's death would not have occurred.

Pursuant to N.C.G.S. § 14-17, "a killing is committed in the perpetration of armed robbery when there is no break in the chain of events between the taking of the victim's property and the force causing the victim's death, so that the taking and the homicide are part of the same series of events, forming one continuous transaction." *State v. Handy*, 331 N.C. 515, 529, 419 S.E.2d 545, 552 (1992).

After being instructed on the possible verdicts in the murder of Donald Bryant, the jury was instructed separately on the robberies of Bryant, Oguayo and Walker. The trial court instructed the jury so that the connection between the robbery of Oguayo and his murder was clear to the jury and in such a manner that there was no reliance on the robberies of Walker or Bryant as the underlying felony on the theory of felony murder. When viewed in their entirety, the instructions clearly informed the jury that the felony underlying the Oguayo felony murder conviction was the robbery of Mr. Oguayo and no other. Thus, we find no error, and this assignment of error is overruled.

For the foregoing reasons, we hold that defendant received a fair trial, free from prejudicial error.

NO ERROR.