114 P.3d 1241 (2005)
STATE of Washington, Respondent,
v.
Brian Keith LORD, Appellant.
No. 30402-3-II.
Court of Appeals of Washington, Division Two.
June 28, 2005.
*1242 Randall Avery Sutton, Kitsap Co Prosecutor's Office, Port Orchard, WA, for Respondent.
Catherine E. Glinski, Attorney at Law, Manchester, WA, for Appellant.

PUBLISHED IN PART OPINION
HUNT, J.
¶ 1 Brian Keith Lord appeals his aggravated first degree murder conviction. He argues that the trial court erred in (1) excluding evidence of a bloodhound's track, (2) allowing the State to introduce a photograph of the victim's sister, (3) admitting evidence of Lord's drug use, and (4) allowing courtroom spectators to wear buttons with the victim's picture. He argues further that State failed to preserve material exculpatory evidence and that defense counsel was ineffective because he failed to request a mistrial and to object to the prosecutor's misstatement of evidence during closing argument.
¶ 2 In Lord's statement of additional grounds (SAG),[1] he contends (1) the trial court erred by excluding evidence of Tom DeMars' prior convictions and drug use and excluding testimony from Susan Whitney; (2) the State committed misconduct by withholding evidence from him and by failing to collect and to preserve exculpatory entomology evidence; and (3) the cumulative effect of the errors deprived him of a fair trial.
¶ 3 Finding no reversible error, we affirm.

FACTS PERTINENT TO PUBLISHED PART OF OPINION
¶ 4 Brian Keith Lord murdered 16-year old Tracy Parker in 1986. A Kitsap County jury convicted him of aggravated first degree murder, for which he was sentenced to death. The Washington State Supreme Court affirmed Lord's conviction and sentence in 1991. The United States Supreme Court declined to review our Supreme Court's decision and let the conviction and sentence stand.
¶ 5 In 1999, the United States Ninth Circuit Court of Appeals granted Lord's petition for a writ of federal habeas corpus. It reversed his conviction and remanded to Kitsap County Superior Court for a new trial. His retrial began in February 2003.
¶ 6 On the first day of trial, defense counsel asked the trial court to forbid some spectators in the courtroom[2] from wearing buttons bearing a "head and shoulder shot" of Tracy Parker, about two and a half inches in diameter.[3] According to the prosecutor, she was unable to recognize whose photograph was depicted on the buttons when she stood six to ten feet from the front row of the jury. The trial court denied Lord's motion to forbid the buttons. Lord neither moved for a mistrial nor requested a curative jury instruction.
¶ 7 On the second day of trial, no one mentioned the buttons. On the third day of trial, eight spectators wore the buttons. Before trial on the fourth day, the trial court directed the spectators not to wear the buttons. The record does not mention that anyone *1243 wore the buttons in the courtroom thereafter.
¶ 8 The State did not seek the death penalty on retrial. After a lengthy trial involving many other legal issues, the jury convicted Lord of aggravated first degree murder, as charged. He was sentenced to life in prison.

ANALYSIS
¶ 9 Lord contends the trial court deprived him of his constitutional rights to confrontation and presumption of innocence by allowing courtroom spectators to wear buttons bearing Tracy Parker's picture during the first three days of trial. We agree that the better practice would have been for the trial court to have prohibited the buttons when Lord first requested, rather than on the fourth day of trial. But we find no denial of Lord's constitutional rights and no abuse of trial court discretion under the circumstances.
Central to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on ... other circumstances not adduced as proof at trial.
Holbrook v. Flynn, 475 U.S. 560, 567, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986) (citations omitted). Whenever a courtroom arrangement is challenged as inherently prejudicial, the question is not whether jurors actually articulated a consciousness of a prejudicial effect but whether there is an unacceptable risk of impermissible factors coming into play. Holbrook, 475 U.S. at 570, 106 S.Ct. 1340. If the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over. Holbrook, 475 U.S. at 570, 106 S.Ct. 1340. As there are no Washington cases discussing the propriety of spectators wearing buttons portraying a victim's picture, we address this issue as one of first impression.
¶ 10 Several cases from other jurisdictions are informative. Lord relies on Norris v. Risley, 918 F.2d 828 (9th Cir.1990), and State v. Franklin, 174 W.Va. 469, 327 S.E.2d 449 (1985). Norris was charged with kidnapping and sexual intercourse without consent. 918 F.2d at 829. The trial court allowed spectators associated with the Billings Rape Task Force and the National Organization for Women to wear buttons bearing the words, "Women Against Rape," with the word "Rape" boldly underlined in red. Norris, 918 F.2d at 829-30. The spectators wearing these buttons were present in the hallways and elevators at the same time jurors were present, and they prepared and served refreshments outside the courtroom for the State's witnesses. Norris, 918 F.2d at 829. Several jurors saw the buttons and their message. Norris, 918 F.2d at 831.
¶ 11 The Ninth Circuit Court of Appeals ruled that the spectators were sending a message to the jury by wearing the buttons, thereby depriving Norris of a fair trial. Norris, 918 F.2d at 834. The court held that the buttons eroded Norris's constitutionally guaranteed presumption of innocence, interfered with his constitutional right to cross-examine and to confront witnesses, and created an unacceptable risk of influencing the jurors. Norris, 918 F.2d at 834. The court reversed Norris's conviction and remanded for a new trial. Norris, 918 F.2d at 834.
¶ 12 In Franklin, the defendant was charged with driving under the influence of alcohol resulting in death. 327 S.E.2d at 451. Throughout the trial, 10 to 30 spectators seated in front of the jury wore buttons bearing the acronym "MADD," which stands for "Mothers Against Drunk Driving." Franklin, 327 S.E.2d at 454. The spectators were led by the sheriff, who was passing out buttons outside the courtroom; at least one of buttons was given to a potential juror. Franklin, 327 S.E.2d at 454. Despite defense counsel's repeated requests for a mistrial, the trial court neither prohibited the buttons nor granted a mistrial. Franklin, 327 S.E.2d at 454. The West Virginia Supreme Court of Appeals ruled that those spectators, led by the uniformed sheriff, "constituted a formidable, albeit passive, influence on the jury"; the Court reversed Franklin's conviction and remanded for a *1244 new trial.[4]Franklin, 327 S.E.2d at 455-56.
¶ 13 We find more analogous, however, three other cases from Virginia, Texas, and North Carolina in which the spectators wore buttons bearing the victim's photograph. In all three cases, the reviewing court affirmed the defendants' convictions because the buttons caused no prejudice. In Johnson v. Commonwealth of Virginia, Johnson objected to the spectators wearing "campaign-size" buttons with the victim's photo. 259 Va. 654, 529 S.E.2d 769, 781, cert. denied, 531 U.S. 981, 121 S.Ct. 432, 148 L.Ed.2d 439 (2000). The trial court allowed the buttons, provided the jury could not see them; it prohibited any button  wearer from contacting any jurors. Johnson, 529 S.E.2d at 781-82. Johnson did not further object. Johnson, 529 S.E.2d at 782. Nothing in the record showed that the buttons prejudiced Johnson. Johnson, 529 S.E.2d at 781. The Virginia Supreme Court affirmed.
¶ 14 In Nguyen v. Texas, seven of at least 25 courtroom spectators were wearing large buttons portraying a color photograph of the victim. 977 S.W.2d 450, 457 (1998). The trial court denied Nguyen's request to order the spectators to remove the buttons. Nguyen, 977 S.W.2d at 457. The record did not reveal where the spectators were sitting, whether they were sitting together, whether the jurors saw the buttons, or if the buttons improperly influenced the jury's verdict. Nguyen, 977 S.W.2d at 457. Finding no prejudice, the Texas Court of Appeals affirmed the lower court's ruling. Nguyen, 977 S.W.2d at 457.
¶ 15 In State v. Braxton, defendants appealed the trial court's denial of a mistrial, claiming that spectators' buttons bearing a photograph were an attempt to influence the jury and, therefore, inherently prejudicial. 344 N.C. 702, 477 S.E.2d 172, 176 (1996). The North Carolina Supreme Court distinguished Braxton from cases where the spectators' badges exclaimed a specific message, as in Norris and Franklin. Braxton, 477 S.E.2d at 177. As in Nguyen, in Braxton, the record did not show the number or identity of the spectators, the identity of the person in the photograph, whether the jury saw the buttons, or that the spectators belonged to a well-known organization. Braxton, 477 S.E.2d at 177. Finding no facts in the record to show prejudice or to indicate that the trial court abused its discretion by allowing spectators to wear the buttons, the Braxton Court affirmed the convictions. Braxton, 477 S.E.2d at 177.
¶ 16 On the first day of Lord's trial, defense counsel noted that courtroom spectators were wearing buttons. The record shows that 13 out of 31 spectators were wearing buttons bearing a "head and shoulder shot" of Tracy Parker, about two and a half inches in diameter, with no written message. Standing six to ten feet from the front row of the jury, the prosecutor could not recognize whose photograph was depicted on the buttons. The trial court denied Lord's request to exclude the buttons. For the next two days of trial, the record contains no further mention of the buttons.
¶ 17 The record does show that on the third day of trial, eight spectators wore the buttons. Before trial began on the fourth day, in response to Lord's continuing objection, the court revisited the button issue and directed the spectators to cease wearing the buttons. The trial court noted, however:
[The buttons do] not convey a message other than to the friends and family of Tracy Parker, and there's no comment contained in the buttons other than you have an association with Ms. Parker, and in my personal opinion this does not rise to the level of being inherently prejudicial or presenting an unacceptable threat to a fair trial.
Report of Proceedings (RP) Vol. 9 at 1195. Lord neither moved for a mistrial nor requested a special jury instruction about the buttons. And the record does not reveal that *1245 anyone wore the buttons during the remaining 28 days of trial.
¶ 18 Lord does not allege, nor has he shown, prejudice. The record does not show that (1) any jurors ever saw the buttons; (2) even had the jury noticed the buttons, they could have seen the photo, and whom it depicted, from where they were seated; or (3) there was any contact between any juror and any spectator wearing a visible button. Moreover, the buttons did not portray a message, and only a few spectators wore them during the first three days of the 31-day trial.
¶ 19 The record before us does not demonstrate that the buttons influenced the jury. Although the better practice would have been to have prohibited the buttons in the court house at first sight, the trial court later ordered the buttons removed, in spite of the absence of prejudice. In so doing, the trial court avoided the possibility of future contamination of the jury and prejudice to Lord.
¶ 20 We hold, therefore, that the buttons did not deprive Lord of his constitutional rights to confrontation and presumption of innocence, and any error was harmless.
¶ 21 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: QUINN-BRINTNALL, C.J., and VAN DEREN, J.
NOTES
[1] RAP 10.10.
[2] Out of 31 spectators in the courtroom, 13 were wearing these buttons.
[3] The buttons had no writing on them.
[4] In State v. McNaught, a Kansas court found no prejudice where spectators wore "MADD" (Mothers Against Drunk Driving) and "SADD" (Students Against Drunk Driving) buttons. 238 Kan. 567, 713 P.2d 457, 468 (1986). The record did not indicate how many people wore buttons, for how long, or whether any jurors saw the buttons. 713 P.2d at 468. The court ruled that the defendant did not show he was prejudiced. 713 P.2d at 468.